[No. 38777-8-II. Division Two. December 22, 2009.]

KEVIN MICHAEL MITCHELL, *Appellant*, v. THE WASHINGTON STATE INSTITUTE OF PUBLIC POLICY, *Respondent*.

804

808

*Kevin M. Mitchell*, pro se.

*Robert M. McKenna, Attorney General*, and *Dierk J. Meierbachtol, Assistant*, for respondent.

¶1 VAN DEREN, C.J. — Kevin Michael Mitchell appeals an order partially vacating the judgment arising from his Public Records Act (PRA)[1] claim against the Washington State Institute for Public Policy (WSIPP) and sanctioning him under CR 11. Mitchell argues that (1) substantial evidence does not support many of the trial court's findings of fact or that they are contrary to law; (2) CR 78(e) is an exclusive remedy for all issues collateral to a cost bill, thereby barring WSIPP's CR 60 motion to vacate the portion of his judgment related to the cost award and for sanctions under CR 11; (3) CR 60 cannot apply to fraud in a cost bill; (4) CR 11 does not apply to cost bills; and, even if CR 60 and CR 11 do apply, (5) the trial court could not vacate the cost award under the PRA or void Mitchell's assignment of his judgment. We affirm.

## FACTS

¶2 Mitchell is an inmate at the Stafford Creek Corrections Center (SCCC). He filed a PRA request for documents in WSIPP's possession as part of a study WSIPP conducted on behalf of the Department of Corrections (DOC). WSIPP

[1] Ch. 42.56 RCW.

forwarded the request to DOC, believing that DOC owned the records. Mitchell sued WSIPP.

¶3 WSIPP later acknowledged its error in forwarding the request to DOC and asked that the court not impose the statutory minimum fine of five dollars per day for its transgression. The trial court found that WSIPP did not comply with the PRA, that its error was in good faith, and imposed a penalty of five dollars per day for the 445 days WSIPP withheld the records.

¶4 On November 14, 2008, the trial court ordered WSIPP to pay Mitchell the accumulated fine of $2,225 and awarded Mitchell costs, directing him to submit a cost bill to the court clerk. On the same day, SCCC received an envelope addressed to Mitchell. The envelope was stamped with the word "LEGAL" and had a return address of "King, Brian M. & Assoc., Atty, P.O. Box 98254, Lakewood, WA 98496." Clerk's Papers (CP) at 27 (emphasis omitted). The envelope contained a cover letter to Mitchell from the "Law Offices of Brian M. King & Associates, Attorneys at Law" that was signed by a paralegal named "Phuk Diocee."[2] CP at 25 (emphasis omitted). It also contained an invoice from a corporation named "NRGETX," a copy of which Mitchell eventually submitted to the trial court to support his cost bill. CP at 26. The invoice included charges for "typeservice" and "common law publishing," totaling $898.43. CP at 26. DOC seized the letter and did not present it to Mitchell because it could not confirm the existence of the designated law offices.

¶5 On November 20, Mitchell mailed three documents to the trial court that the clerk filed on November 25: (1) an assignment of judgment to a corporation, MCS Global Incorporated; (2) a judgment summary listing the amount

---

[2] The parties disagree about the proper pronunciation of this name. WSIPP argues that it is pronounced " 'Fuck D.O.C.' " while Mitchell argues that it is pronounced " 'Fook De-awchay.' " CP at 108. Brian David Matthews stated that Phuk Diocee "is the religious name that I have long ago declared that I shall be known as amongst believers of my faith [(Anunnaki)] and members of my Fraternal Society"; apparently, the name comes from "ancient Summerian" and "is believed to translate into the equivalent of 'Dedicated Study.' " CP at 108, 121.

of the judgment ($2,225.00) plus costs and attorney fees ($1,374.66); and (3) a cost bill listing the clerk's filing fee ($200.00), process server fee ($60.00), postage costs ($16.23), "[c]ommon law publication/[l]egal [t]ypeservice fees" ($898.43), and a statutory attorney fee ($200.00). CP at 10. On December 1, the clerk filed a copy of the NRGETX invoice, which Brian David Matthews[3] had mailed to the trial court.

¶6 On December 10 and 11, DOC forwarded the intercepted envelope and its contents to the attorney general and WSIPP's counsel. WSIPP discovered that there was a Washington State lawyer named Brian M. King, but that he did not perform legal work for Mitchell. WSIPP determined that NRGETX was a Washington corporation located at "6709 Marshall Ave., SE, in Auburn Washington," that had a registered agent listed as " 'Patrick Alan' " and directors " 'Patrick Alan' " and " 'Brian David.' " CP at 15-16. "MCS Global Legal Services" also listed the name " 'Patrick Alan' " as the registered agent and was located at the same address as NRGETX. CP at 16. It listed officers or directors, including " 'Patrick Alan' " and Mitchell. CP at 16. Patrick Alan Mitchell is Mitchell's father, who at the time lived at 6709 Marshall Ave. SE, Auburn WA 98092. " 'Patrick Alan' " is also the registered agent for the " 'Prisoner Art Fund,' " the " 'Alyssa Destiny Eldridge Reparation Fund,' " and the " 'Church of Interdimensional Anunnaki.' " CP at 17.

¶7 On December 12, WSIPP moved to vacate Mitchell's cost award and for sanctions under CR 11. Mitchell responded with many of the same arguments he raises on appeal. Matthews provided a copy of his process server license that included his name and the name of "MCS Global Inc." CP at 83. Mitchell claimed that Jeffery Randall McKee served process on WSIPP for him. If so, McKee served process using Mitchell's process server license.

¶8 On January 13, 2009, the trial court vacated part of Mitchell's judgment and granted CR 11 sanctions against

---

[3] Matthews, a one-time inmate of SCCC, has experience with public disclosure requests, having filed several with DOC.

him. The amended order allowed costs for the clerk's filing fee ($200.00) and postage ($16.23) but no additional costs. CP at 86. The trial court imposed CR 11 sanctions against Mitchell of $2,316.86. The trial court then ordered that the balance, $124.37, be paid solely to Mitchell and not to the assignee of his judgment.

¶9 Mitchell appealed. Pending appeal, on January 26, Mitchell moved under CR 59 and RAP 7.2(e) for the trial court to reconsider its order vacating the judgment in part and imposing CR 11 sanctions. Mitchell relied solely on Matthews's declaration to support his motion. Matthews's materials included (1) several of his own declarations; (2) a copy of NRGETX's certificate of incorporation; (3) a contract between NRGETX and Mitchell that appears to be signed by Patrick A. Mitchell and Mitchell; (4) the NRGETX invoice; (5) and a declaration from Sean Brooks Skirlaw, Mitchell's typist at SCCC. In these documents:

- Matthews acknowledged that the law office shown on the envelope and cover letter DOC intercepted did not exist. Matthews also provided an explanation for the particular words used on the envelope and cover letter. He explained that he acted on his own to send the NRGETX invoice to Mitchell using the phrase " 'King, Brian M. & Assoc. Atty' " on the envelope. CP at 107-08 (emphasis omitted). Matthews further explained that " 'King' " referred to his sovereignty, " 'Brian M.' " referred to his first name and last initial, " 'Assoc.' " referred to his fraternal and religious association with Mitchell, and " 'Atty' " was actually pronounced " 'uh-tea' " and was the way members of the association referred to one another. CP at 108. Finally, he explained that the cover letter from the " 'Law offices of Brian M. King & Associates, Attorneys at Law' " was "a novelty/gag/joke only" and that he knew the law office did not exist. CP at 108.

- Matthews acknowledged that he stamped the envelope with the word " 'Legal Mail' " because it was of a "legal nature" and that, as the "underlying correspondence was coming from a non-approved legal source, [it] would be intercepted and opened in Mr. Mitchell's presence." CP at 108-09.

- Matthews claimed that "Mitchell did not instruct, order, request (or the like) me to send in the NRGETX invoice ... through any " ' ... auspices of a fictional law firm ...' " and ... Mitchell had no knowledge whatsoever that I would convey the same as I did." CP at 109 (emphasis omitted).

- The type service costs incurred were apparently to pay for typing by Skirlaw, a "volunteer" of NRGETX, who was incarcerated in the same DOC facility as Mitchell. CP at 106.

- The "[c]ommon [l]aw [r]esearch/[p]ublishing" expenses were for "research and publication of applicable Washington State Supreme Court case laws/opinions respecting violations of the Public Records Act, RCW 42.56 et seq., and potential remedies thereunder." CP at 107.

¶10 On April 16, the trial court issued findings of fact and conclusions of law as part of a corrected order granting the WSIPP's motion to vacate and for CR 11 sanctions. On May 15, the trial court issued another corrected order modifying the April 16 order.

¶11 Mitchell appeals the modified order.

## ANALYSIS

### I. TRIAL COURT FINDINGS

¶12 Mitchell asks us to conduct a "de novo review of the documentary evidence in order to see-through the alleged findings made by the trial court."[4] Supp. Br. of Appellant at 1. Barring new findings of fact by our court, Mitchell argues that the trial court erred in two of its findings and abused its discretion in nine findings because substantial evidence does not support the findings. These arguments fail.

[4] Mitchell claims that "[a]s the evidence consists solely of documentary evidence, this court may review such evidence to reach separate findings," citing several cases to support this proposition. Supp. Br. of Appellant at 10. At best, the cited cases allow the appellate court to "independently review the evidence to determine whether a violation ... occurred" when "the trial judge has applied the wrong legal standard to evidence consisting entirely of written documents and argument of counsel." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 345-46, 858 P.2d 1054 (1993). Furthermore, Mitchell does not argue that the trial court applied the wrong standard.

## A. Standard of Review

¶13 We review de novo questions of law and a trial court's conclusions of law.[5] *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). And we review findings of fact[6] "under a substantial evidence standard." *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008). "Substantial evidence is evidence that would persuade a fair-minded person of the truth of the statement asserted." *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

¶14 We defer to the fact finder and "consider all of the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority." *Cingular Wireless*, 131 Wn. App. at 768. And "[w]e reserve credibility determinations for the fact finder and do not review them on appeal." *J.L. Storedahl & Sons, Inc. v. Cowlitz County*, 125 Wn. App. 1, 11, 103 P.3d 802 (2004). In the end, "A trial court's findings of fact must justify its conclusions of law."[7] *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007).

## B. Findings of Fact

¶15 Mitchell challenges the sufficiency of the evidence supporting findings of fact 6, 9, 12, 14, 16, 17, 19, 20, and 21. We reject his challenges.

---

[5] "[I]f a term carries legal implications, a determination of whether it has been established in a case is a conclusion of law." *Miebach v. Colasurdo*, 35 Wn. App. 803, 814, 670 P.2d 276 (1983).

[6] " 'A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.' " *Leschi Improvement Council v. Wash. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774, 804 P.2d 1 (1974) (internal quotation marks omitted) (quoting *Nat'l Labor Relations Bd. v. Marcus Trucking Co.*, 286 F.2d 583, 590 (2d Cir. 1961)).

[7] Putting all of the pieces together, "a conclusion of law[ ] is supported by findings of fact and they in turn are supported by the evidence." *Alexander Myers & Co. v. Hopke*, 88 Wn.2d 449, 460, 565 P.2d 80 (1977).

¶16  1. Finding of fact 6: "According to the records of King County's Records and Services Division, Plaintiff is registered as a process server in King County under the license number 0741428-13414." CP at 145.

¶17  Although Mitchell concedes "that his name appears on the face of the Process Server License," he argues that substantial evidence does not support finding of fact 6 because his name appeared on the license in combination with his corporation's name[8] through an error King County committed.[9] Supp. Br. of Appellant at 4-5. WSIPP contends that the fact Mitchell was registered with King County is inescapable and that Mitchell's allegation that King County erred in some manner is entirely without supporting evidence.

¶18  The process server license King County issued clearly states, "MCS Global Inc[.] for: Kevin Michael Mitchell." CP at 83 (emphasis omitted). As Mitchell concedes that he is a registered process server and can point to no evidence in the record to support his assertion that King County erred, his argument lacks merit and we hold that substantial evidence supports the trial court's finding of fact 6.

¶19  2. Finding of fact 9: "On November 14, 2008, SCCC intercepted a letter addressed to Plaintiff. It purported to be from the law firm of Brian M. King & Assoc. of Lakewood Washington. The word ' "Legal" ' was stamped on the front of the envelope." CP at 145 (emphasis omitted).

¶20  Mitchell argues that finding of fact 9 is misleading and requests that it be stricken because Matthews acknowledged his use of the pseudonym "Brian M. King" and the use of a " 'Legal' " stamp and because WSIPP did not rebut

---

[8] In Mitchell's reply, he contends the trial court committed an error of law in finding of fact 6 because "an individual and a corporation cannot both possess the same license." Reply Br. of Appellant at 5. But we need not consider an issue raised and argued for the first time in a reply brief. *Boyd v. Davis*, 127 Wn.2d 256, 264-65, 897 P.2d 1239 (1995); *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990).

[9] Mitchell fails to support this statement with any citation to the record.

Matthews's affidavits. Supp. Br. of Appellant at 6. But here, the evidence is not refuted that on November 14, 2008, the SCCC received an envelope for Mitchell. The envelope was addressed to Mitchell, was stamped with the word "LE-GAL," and had a return address of "King, Brian M. & Assoc., Atty, P.O. Box 98254, Lakewood, WA 98496." CP at 27 (emphasis omitted). The envelope contained a cover letter to Mitchell from the "Law Offices of Brian M. King & Associates, Attorneys at Law." CP at 25 (emphasis omitted). We hold that substantial evidence supports finding of fact 9 as Mitchell does not contest that this envelope addressed to him with the cover letter inside was mailed to him at SCCC.[10]

¶21 3. Finding of fact 12: "The envelope and letter were a forgery. There is no law office of Brian M. King & Assoc. in Lakewood, Washington." CP at 145.

¶22 Mitchell argues that, given Matthews's explanation of the envelope and cover letter in finding of fact 9, there is not substantial evidence that the intent element of forgery is satisfied. We disagree.

¶23 On receiving the envelope and letter, DOC discovered that there was no such law firm or practitioner at the specified address and forwarded a copy of the documents to WSIPP. WSIPP located an attorney, Brian M. King—who is licensed to practice law in Washington—but King confirmed that he did not perform legal work for Mitchell. Matthews admitted in his affidavit that no such law office exists. We hold that there is substantial evidence to support the finding that the envelope with the enclosed letter was a forgery,[11] i.e., not genuine articles from the law office of attorney Brian M. King.

---

[10] Matthews's affidavit acknowledges the envelope and cover letter and offers an explanation of why the letter and envelope contained what either appears to refer to a law firm (the envelope) or actually refers to a law firm (the letter).

[11] We note that "forgery" can mean either "an act of forging" that usually refers to "the crime of falsely and with fraudulent intent making or altering a writing or other instrument that if genuine might apparently be of legal effect on the rights of another" or "something produced by forging, fabricating, or counterfeiting." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 891 (2002). The trial court's gram-

¶24 4. Finding of fact 14: "Brian David Matthews falsified the envelope and cover letter in order to deliver the invoice to Plaintiff through DOC's legal mail system." CP at 145.

¶25 Mitchell argues that substantial evidence does not support finding of fact 14 because Matthews explained the letter's meaning and DOC is not a party to this action. Again, we disagree.

¶26 Included in the envelope with the cover letter was the invoice from NRGETX, a different copy of which Matthews submitted to the trial court to support Mitchell's cost bill. Matthews acknowledged that he stamped the envelope with the word " 'Legal Mail' " because it was of a "legal nature" and that, as the "underlying correspondence was coming from a non-approved legal source, [it] would be intercepted and opened in Mr. Mitchell's presence." CP at 108-09. Matthews also recognized that no such law firm existed. Matthews provided an explanation[12] for the particular words used on the envelope and cover letter.

¶27 Although Matthews's explanation is fascinating, we must defer to the fact finder's credibility determination and "consider all of the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority." *Cingular Wireless*, 131 Wn. App. at 768. Therefore, we hold that substantial evidence supports finding of fact 14 and the inferences underlying it.

¶28 5. Finding of fact 16: "The Court finds that Plaintiff knowingly requested Brian David Matthews to transmit the NRGETX invoice to Plaintiff through DOC's legal mail system." CP at 146.

---

matical formulation clearly denotes the latter. The matter below was not a criminal or civil action against Matthews for forgery.

[12] In addition to the explanation we recited earlier in this opinion, according to Matthews's affidavit, "Whereas I have heretofore declared my own Sovereignty . . . as it may hereinafter arise I Shall Correspond with believers of the faith of Anunnaki (Nnakians) and Fraternal brothers of N[eo ]O[rdo ab ]A[nunnaki] through the use of the following codified pseudonym: King, Brian M. & Assoc., Atty." CP at 119.

¶29 Mitchell argues that substantial evidence does not support finding of fact 16 because Matthews swore that he sent the letter on his own and that Mitchell did not request it be sent through legal mail. WSIPP argues that this finding of fact is a reasonable, fact-based inference drawn from substantial evidence in the record. Given Mitchell's commercial relationship with Matthews, the explanations Matthews provided for his actions, and the other documents provided, we agree with WSIPP and hold that substantial evidence supports finding of fact 16 and the inferences underlying it.

¶30  6. Finding of fact 17: "Plaintiff never received a copy of the NRGETX invoice." CP at 146.

¶31 Mitchell argues that there was contrary evidence that he received a copy of the NRGETX invoice. Mitchell points out that he received a copy of the NRGETX invoice both with WSIPP's motion to vacate costs and with Matthews's affidavit. WSIPP argues that "[s]ubstantial evidence in the record shows that, prior to submitting his cost bill to the trial court, Mr. Mitchell in fact did not receive a copy of the invoice." Br. of Resp't at 12-13. Mitchell does not dispute this argument but he responds that he "drafted his cost bill with the amounts that were provided by NRGETX agents over the telephone."[13] Reply Br. of Appellant at 6.

¶32 We hold that, to the extent that finding of fact 17 referred to the period before Mitchell submitted the cost bill, substantial evidence in the record supports it.

¶33  7. Finding of fact 19: "Plaintiff filed a signed and dated cost bill with the Court that knowingly contained false and/or misleading information regarding the process server fee." CP at 146.

¶34 Mitchell argues substantial evidence does not support finding of fact 19 because the process server was a

---

[13] Mitchell does not cite to the record to support this contention. We do not review matters for which the record is inadequate. *Bich v. Gen. Elec. Co.*, 27 Wn. App. 25, 34, 614 P.2d 1323 (1980).

corporate employee; MCS Global Inc. possessed a process server license and, therefore, service was proper and because service was proper, the information regarding the process server fee was not " 'false and/or misleading.' " Supp. Br. of Appellant at 9 (quoting CP at 146). This argument fails.

¶35 Mitchell argues that McKee could legally serve process. The record reveals that Mitchell filed a cost bill that included a charge for service of process; McKee served process for Mitchell; McKee was not licensed to serve process; Mitchell's company may have possessed a license to serve process; and Mitchell alleges, but supplies no proof, that McKee was a corporate employee.

¶36 Mitchell fails to cite any evidence in the record that Jeffrey McKee worked for MCS Global Inc. and our review of the record discloses no such evidence. Left with nothing but Mitchell's bare assertions in his appellate and trial court filings, there is no evidence that McKee was an employee of MCS Global Inc. such that the license would allow him to properly serve process. Therefore, we hold that substantial evidence supports finding of fact 19.

¶37 8. Finding of fact 20: "Plaintiff knowingly sought to improperly use DOC's legal mail system to obtain false documentation supporting his cost bill." CP at 146.

¶38 Mitchell argues that substantial evidence does not support finding of fact 20 because Matthews averred that Mitchell did not know that the invoice would be sent via DOC's legal mail system under the law firm name. This argument also fails. Because substantial evidence supports finding of fact 16, we hold that substantial evidence supports finding of fact 20 and its underlying inferences.

¶39 9. Finding of fact 21: "Plaintiff filed his cost bill with the improper purpose of inflating the costs that he would be awarded under the judgment." CP at 146.

¶40 Mitchell argues that substantial evidence does not support finding of fact 21 because all of his costs were proper. We also reject this claim.

¶41 According to Mitchell, he is entitled to "typeservice" fees, which refers to dictation costs, and "[c]ommon law research/publication," which encompasses "locating and compiling relevant portions of common law that fit criteria requested by Mitchell." Br. of Appellant at 17-18. Mitchell also claims process server fees for service by his alleged corporate employee where the license lists only the corporation and Mitchell. Finally, Mitchell claims that he is due statutory attorney fees.

¶42 The statutory attorney fee is clearly not improper. But here, there is substantial evidence supporting the findings that the person who served process was not licensed to serve process or allowed to serve process under Mitchell's license. The typeservice costs incurred were apparently to pay for Skirlaw, a "volunteer" of NRGETX,[14] who was incarcerated in the same facility as Mitchell. CP at 106. The "Common Law Research/Publishing" expenses were for "research and publication of applicable Washington State Supreme Court case laws/opinions respecting violations of the Public Records Act, RCW 42.56 et seq., and potential remedies thereunder." CP at 107.

¶43 Given the previous findings of fact and the lack of detail about and the circumstances of the charges from NRGETX, we hold that substantial evidence supports finding of fact 21 and its underlying inferences.

C. Findings of Fact Challenged as Conclusions of Law

¶44 Mitchell also challenges the trial court's findings of fact 7 and 18 as conclusions of law. These challenges also fail.

¶45 Finding of fact 7: "Plaintiff's cost bill did not disclose that he was an owner of MCS Global Legal Services," and

---

[14] One of NRGETX's business and mailing addresses, "6709 Marshall Ave., SE, in Auburn Washington," was shared with MCS Global Legal Services, whose officers included Kevin Michael Mitchell. CP at 16. NRGETX's directors included "'Brian David'" and "'Patrick Alan.'" CP at 15. "'Patrick Alan'" was also an officer of MCS Global Legal Services. CP at 16. Furthermore, Patrick Alan Mitchell, Mitchell's father, lived at 6709 Marshall Ave. SE, Auburn, WA 98092.

finding of fact 18: "Plaintiff did not disclose in his cost bill that he had personal and professional relationships with NRGETX, Inc." CP at 145-46.

¶46 Mitchell concedes that both statements are true but he argues that he had no legal duty to disclose his ownership interest or relationships and that the findings are, therefore, "contrary to law." Suppl. Br. of Appellant at 5. As Mitchell does not challenge the veracity of these findings, they are verities on appeal and we do not review them as conclusions of law. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006), *review denied*, 160 Wn.2d 1012 (2007). Mitchell's arguments lack merit.

## II. VACATION OF COST JUDGMENT

¶47 Mitchell argues that a party who fails to bring a motion to retax costs under CR 78 waives all objections to a submitted cost bill and the trial court loses its jurisdiction to consider any issue related to the cost bill because CR 78(e) provides the exclusive remedy for cost bill challenges. Mitchell also argues that the trial court erred because CR 60 does not allow a trial court to vacate a judgment based on a cost bill. Mitchell also contends that the trial court abused its discretion because it misapplied CR 60, allowing vacation of the judgment, where the fraud, misrepresentation, or misconduct did not affect the trial.

### A. Standard of Review

¶48 "Interpretation of a court rule is a question of law, subject to de novo review." *Gourley v. Gourley*, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006). We review a trial court's decision on a motion to vacate under CR 60(b) for abuse of discretion. *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978). "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it

rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). "A decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take,' *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990), and arrives at a decision 'outside the range of acceptable choices.' " *Rohrich*, 149 Wn.2d at 654 (quoting *Rundquist*, 79 Wn. App. at 793).

B. CR 78(e)[15]

¶49 Mitchell argues that the "mechanics" of CR 78(e) are "a near mirror image" of Federal Rule of Civil Procedure (FRCP) 54(d)(1). Br. of Appellant at 11. Under the rule:

> Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 day's notice. On motion served within the next 7 days, the court may review the clerk's action.

FRCP 54(d)(1). The concepts are similar but the rules are not "a near mirror image."

¶50 Even if we accept Mitchell's premise, we cannot reach his conclusion that FRCP 54(d)(1) precludes any

---

[15] CR 78(e) states, in part:

If no cost bill is filed by the party to whom costs are awarded within 10 days after the entry of the judgment or decree, the clerk shall proceed to tax the following costs and disbursements, namely:

(1) The statutory attorney fee;

(2) The clerk's fee; and

(3) The sheriff's fee.

If a cost bill is filed, the clerk shall enter as the amount to be recovered the amount claimed in such cost bill, and no motion to retax costs shall be considered unless the same be filed within 6 days after the filing of the cost bill.

For purposes of this subsection (e), "cost bill" also includes an affidavit detailing disbursements.

other form of relief where a cost bill is at issue. Mitchell relies on *Walker v. California*, 200 F.3d 624 (9th Cir. 1999) to support his argument. But *Walker* involved a defendant who moved under FRCP 54(d)(1) and not FRCP 60(b) or Washington's CR 60(b) to retax 25 days after the cost bill was filed in a situation where there were no similar claims of fraud, misrepresentation, or misconduct asserted as a basis to reopen the judgment. 200 F.3d at 626.

¶51 Contrary to Mitchell's argument, Washington courts have never held that CR 78(e) divests a court of subject matter jurisdiction over any issue related to costs. To the contrary, Division One of this court entertained the possibility that other objections to a cost bill might be raised after the period for retaxing expires: "The only reasonable inference from the record is that the objections, which were filed within the time constraints of CR 78(e)[ ], were intended as motions to retax costs." *King Cnty. Water Dist. No. 90 v. City of Renton*, 88 Wn. App. 214, 230-31, 944 P.2d 1067 (1997). And in reference to an appeal of a cost bill, our Supreme Court noted, "No motion or other application was made by the appellant either to retax the costs or to strike the cost bill. The trial court was given no opportunity to pass upon this question." *Simpson Logging Co. v. Chehalis County*, 80 Wash 245, 250, 141 P. 344 (1914).

¶52 These cases suggest that trial courts are to be given an opportunity to address motions to strike cost bills, not to merely entertain motions to retax. Chapter 4.84 RCW, which authorizes taxation and retaxation, "is in a degree directory. Its purpose is to prevent the overtaxation of costs, not to deprive a litigant of costs of which he is justly entitled, and when its purposes have been accomplished, merely technical objections should not be allowed to prevail." *Metro. Bldg. Co. v. Curtis Studio of Seattle*, 138 Wash. 381, 390, 244 P. 680 (1926) (discussing the rule in relation to Rem. Comp. Stat. 482, now codified as RCW 4.84.090).

¶53 Absent clear language to the contrary, we will not mechanically apply CR 78(e) to deprive a litigant of costs to which he is justly entitled or to enrich a litigant with costs

that he has unjustly secured. We hold that CR 78(e) is not intended to preclude all forms of a review related to a cost bill when the six day period for retaxation has passed.

## C. CR 60(b)(4)

¶54 Mitchell also argues that the trial court lacked authority to entertain a motion to vacate under CR 60 because CR 78(e) withdrew the trial court's authority to entertain any motion related to the cost bill, effectively divesting them of "authority" to entertain the motion. Br. of Appellant at 7. We have rejected his claim that CR 78(e) deprives the trial court of jurisdiction over challenges to cost bills.

¶55 CR 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding." Superior courts have subject matter jurisdiction to vacate judgments and final orders. *Barker v. City of Seattle*, 97 Wash. 511, 515, 166 P. 1143 (1917). Jurisdiction over the parties in an action extends to any proceeding for post-judgment relief under CR 60(b). *In re Marriage of Parks*, 48 Wn. App. 166, 171-72, 737 P.2d 1316 (1987). For actions against the State of Washington, venue is proper in Thurston County. RCW 4.92.010(5). And, even after a year, the superior courts have jurisdiction, in certain instances, to grant relief in equity against a judgment. *State ex rel. Prentice v. Superior Court*, 86 Wash. 90, 95-96, 98, 149 P. 321 (1915). Therefore, a broad and deep foundation underlies the superior court's authority to vacate a judgment. Of course, the moving party must establish an appropriate reason for the trial court to vacate a judgment or the superior court abuses its discretion. *Pybas v. Paolino*, 73 Wn. App. 393, 403-04, 869 P.2d 427 (1994).

¶56 Here, WSIPP moved to vacate the judgment on Mitchell's cost bill on the basis of CR 60(b) for:

> (3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under 59(b);

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

CR 60(b).

¶57 The trial court may grant relief under CR 60(b)(4) without considering the probable effect of the misconduct on the trial's outcome. *Taylor v. Cessna Aircraft Co.*, 39 Wn. App. 828, 836-37, 696 P.2d 28 (1985). The moving party must prove the misconduct by clear and convincing evidence. *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990).

¶58 To satisfy the CR 60(b)(4) requirements, WSIPP need not have established the nine elements of common law fraud—although findings and conclusions for all nine elements would satisfy the rule, " 'misrepresentation or other misconduct' would also justify vacation of the judgment under CR 60(b)(4)." *In re Marriage of Maddix*, 41 Wn. App. 248, 252, 703 P.2d 1062 (1985). The contested findings of fact, discussed above, and the uncontested findings, with the evidentiary support in the record, establish by clear and convincing evidence that Mitchell used false documentation to support his cost bill "with the improper purpose of inflating the costs that he would be awarded under the judgment." CP 146.

¶59 Mitchell argues that the WSIPP failed to show that the fraudulent conduct or misrepresentation caused the entry of the judgment, thereby preventing WSIPP from "fully and fairly presenting its defense on the underlying judgment."[16] Reply Br. of Appellant at 3; *see Lindgren*, 58 Wn. App. at 596. Mitchell misapprehends *Lindgren* and

---

[16] Both Mitchell and WSIPP cite *Momah v. Bharti*, 144 Wn. App. 731, 182 P.3d 455 (2008), *review granted*, 165 Wn.2d 1027 (2009), without a pinpoint citation, for the proposition that clear and convincing evidence must show that the party was unable to present its case or defense. Although other cases support that statement, our review of *Momah* shows that it does not support that proposition.

related cases where the parties moved under CR 60(b) to vacate default judgments connected to a separate underlying cause of action for misrepresentation or fraud. *See Lindgren*, 58 Wn. App. at 590, 594-96; *see also Peoples State Bank v. Hickey*, 55 Wn. App. 367, 371-72, 777 P.2d 1056 (1989). Here, a new trial would not alter WSIPP's case-in-chief or the trial court's decision on the merits. The only matter affected by Mitchell's fraud, misrepresentation, or misconduct is the penalty phase of the proceedings—specifically, whether to award costs to Mitchell based on his fraudulent pleadings. Here, Mitchell's misconduct resulted in an inflated cost award to his benefit.

¶60 We hold that the trial court did not abuse its discretion when it vacated Mitchell's judgment based on his cost bill under CR 60(b)(4) due to his proven misconduct.

III. SANCTIONS

¶61 Mitchell next argues that the trial court erred when it applied CR 11 to a cost bill because CR 78(e) governs. He further contends that the cost bill was not a pleading, motion, or legal memorandum so CR 11 does not apply.

A. Standard of Review

¶62 We review the trial court's imposition of sanctions for abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). CR 11 grants the court "discretionary authority to impose sanctions upon a motion by a party or on the superior court's own initiative." *Labriola v. Pollard Grp. Inc.*, 152 Wn.2d 828, 842, 100 P.3d 791 (2004). "In deciding whether the trial court abused its discretion, we must keep in mind that '[t]he purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system'." *Biggs*, 124 Wn.2d at 197 (emphasis omitted) (alteration in original) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)).

## B. CR 11

¶63 Under CR 11(a):

Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in the attorney's individual name, whose address and Washington State Bar Association membership number shall be stated. A party who is not represented by an attorney shall sign and date the party's pleading, motion, or legal memorandum . . . . The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

¶64 For the same reasons that CR 78(e) does not preclude a motion under CR 60, Mitchell's argument that CR 78(e) preempts CR 11 is without merit.[17] Further, the document list in CR 11 is not as narrow as Mitchell would like. A signature on an affidavit in support of motion subjects the party to sanctions under CR 11. *See Miller v. Badgley*, 51 Wn. App. 285, 303, 753 P.2d 530 (1988). We agree with and adopt the statement in *Clipse v. State*, 61 Wn. App. 94, 97 n.1, 808 P.2d 777 (1991), that the term " 'legal memorandum' " applies to "briefs or other papers

---

[17] Mitchell argues that *Clipse v. State*, 61 Wn. App. 94, 97, 808 P.2d 777 (1991) stands for the proposition that CR 11 does not apply if another rule applies. But *Clipse* held that CR 11 did not apply to abuse of discovery disclosures because CR 26 applies to discovery disclosure, providing a trial court with the authority to sanction abuses. 61 Wn. App. at 97. CR 78(e) contains no similar provision for sanctions, making the comparison inapt.

filed in support of pleadings or motions." A cost bill is nothing more than a document that supports a party's request for attorney fees and costs in signed pleadings and motions. It is not a license to commit fraud or other misconduct in order to enhance the recovery under a cost bill. Therefore, we hold that a cost bill is a legal memorandum subject to sanction under CR 11, even outside the period specified for motions to retax under CR 78(e).

## C. Penalties

### 1. Costs

¶65 Mitchell seems to argue that all his costs were proper and that the PRA required the trial court to award all his costs. According to Mitchell, he is entitled to "typeservice" fees, dictation costs, and "[c]ommon law research/publication" costs that encompass "locating and compiling relevant portions of common law that fit criteria requested by Mitchell," process server fees, and statutory attorney fees.[18] Br. of Appellant at 17-18.

¶66 The PRA authorizes that

[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that

---

[18] Mitchell contends that the trial court denied his statutory attorney fees because he was not and did not employ an attorney. But the court clarified its earlier ruling:

[WSIPP]: . . . I do want to clarify one thing for the record . . . and I think this is an important point. When . . . you made your initial ruling three weeks ago on this matter, you ruled that Mr. Mitchell was not entitled to $200 in attorney's fees pursuant to RCW 4.84.080. My understanding of the basis for your ruling . . . was that Mr. Mitchell was not entitled to that because of the inappropriate actions that he's taken in this case. . . .

THE COURT: That is the basis.

Report of Proceedings (Jan. 13, 2009) at 9.

he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4). The PRA appears to authorize a "more liberal cost recovery than that allowed by RCW 4.84.010" but it "does not contain a definition of what it means by 'all costs.'" *Am. Civil Liberties Union of Wash. v. Blaine Sch. Dist. No. 503*, 95 Wn. App. 106, 117, 975 P.2d 536 (1999).

¶67 "[B]ut the plain meaning of the word 'all' logically leads to the conclusion that the drafters of the act intended that the prevailing party could recover all of the reasonable expenses it incurred in gaining access to the requested records." *Am. Civil Liberties Union*, 95 Wn. App. at 117. In *American Civil Liberties Union*, Division One noted, "Furthermore, a liberal allowance for cost recovery will further the policy of the public's right to access public records and is consistent with Washington's trend of gradually liberalizing the availability of cost recovery in private actions that enforce publicly important rights." 95 Wn. App. at 117.

¶68 At the same time, the PRA does not always penalize an agency where it is not in strict adherence to the statute's dictates. Division Three of this court has held that the trial court "appropriately denied a cause of action to enforce redisclosure of records known by the complainant to already be in his possession." *Daines v. Spokane County*, 111 Wn. App. 342, 349, 44 P.3d 909 (2002).

¶69 We note that the public policy behind the PRA is clear:

The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected. In the event of conflict between the provisions of this chapter and any other act, the provisions of this chapter shall govern.

RCW 42.56.030.

¶70 Using the PRA as a vehicle of personal profit through false, inaccurate, or inflated costs is contrary to the PRA's stated purpose to keep the governed informed about their government; costs based on false, inaccurate, or inflated claims do not serve that purpose and are not reasonable. The trial court did not abuse its discretion when it limited Mitchell's cost recovery to those costs it could determine were reasonable when it discovered the misconduct and misrepresentations used to inflate the cost bill. The trial court did not abuse its discretion when it awarded Mitchell only clerk's fees and postage.

### 2. Sanctions—Amount

¶71 Mitchell argues that the trial court abused its discretion because it misapplied CR 11 in selecting and awarding an arbitrary amount. Given the wide latitude granted to courts for sanctions under CR 11, we hold that, under the circumstances of this case and the evidence before it, the trial court did not abuse its discretion.

### 3. Sanctions—Setoff

¶72 Mitchell further argues that the CR 11 sanction the trial court imposed constituted an abuse of discretion because the sanction is a " 'set-off' " that is a " 'fee shifting mechanism.' " Br. of Appellant at 22 (quoting *Biggs*, 124 Wn.2d at 197). Mitchell cites *Biggs*, 124 Wn.2d at 197, but does not analyze *Bryant*, 119 Wn.2d at 220, wherein our Supreme Court states that "CR 11 is not a mechanism for providing attorneys fees to a prevailing party where such fees would otherwise be unavailable." Mitchell's argument on this point also lacks merit.

### 4. Assignment of Judgment

¶73 Mitchell also argues that the trial court abused its discretion when it did not honor his assignment of the judgment to his corporation; the effect of which, WSIPP argues, was to protect the proceeds of the judgment from DOC's reach.

¶74 There is no statute that explicitly authorizes a trial court to restrict or deny an inmate's assignment of a judgment. Mitchell contends that restriction is not allowed because "a 'judgment is a valuable asset that may be freely assigned like any other valuable right.' " Reply Br. of Appellant at 7 (quoting 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.10, at 428 (2003)) (Mitchell's language is not an accurate quote. The correct language is "judgment is a valuable asset. The judgment creditor may assign it like any other valuable asset."). Mitchell cites no authority stating that a trial court's authority to limit assignment of a judgment is circumscribed. Under chapter 4.56 RCW:

> When any judgment has been assigned, the assignment may be filed in the office of the county clerk in the county where the judgment is recorded and a certified copy thereof may be filed in any county where an abstract of such judgment has been filed and from the time of such filing shall be notice of such assignment: PROVIDED, That such assignment of a judgment or such certified copy thereof, may not be filed unless it is properly acknowledged before an officer qualified by law to take acknowledgment of deeds.

RCW 4.56.090. Taken alone, there is neither a provision that commands nor a provision that prohibits a court from refusing to allow a party to assign their judgment nor is there a Washington case related to this issue.

¶75 Yet even if trial courts have no explicit authority to limit a judgment creditor's assignment of the judgment, courts cannot facilitate illegal activity, even when the parties are unaware of the violation. *See Morelli v. Ehsan*, 110 Wn.2d 555, 564, 756 P.2d 129 (1988). The property of inmates and prisoners is not within their full control. For example, the DOC secretary is directed to "deduct taxes and legal financial obligations from the gross wages, gratuities, or workers' compensation benefits payable directly to the inmate." Former RCW 72.09.111(1) (2007). Similarly, prisoners "employed under a work release plan shall surrender to the secretary . . . his or her total earnings." RCW 72.65.050.

¶76 But even more expansively:

> The secretary shall be custodian of all funds of a convicted person that are in his or her possession upon admission to a state institution, or that are sent or brought to the person, or earned by the person while in custody, or that are forwarded to the superintendent on behalf of a convicted person. All such funds shall be deposited in the personal account of the convicted person within the institutional resident deposit account as established by the office of financial management pursuant to RCW 43.88.195, and the secretary shall have authority to disburse money from such person's personal account for the purposes of satisfying a court-ordered legal financial obligation to the court. Legal financial obligation deductions shall be made as stated in RCW 72.09.111(1) and 72.65.050 without exception.

RCW 72.11.020. Finally, "[w]hen an inmate . . . receives any funds from a settlement or award resulting from a legal action, the additional funds shall be subject to the deductions in RCW 72.09.111(1)(a) and the priorities established in chapter 72.11 RCW." Former RCW 72.09.480(3) (2007).

¶77 Because the legislature has expressly provided that inmate's funds are subject to DOC administered deductions, the trial court properly restricted Mitchell's attempt to circumvent chapter 72.11 RCW.

IV. MOTION FOR RECONSIDERATION

¶78 Mitchell argues that when the trial court denied his CR 59 motion for reconsideration it "applied the incorrect laws, constituting an abuse of discretion." We disagree.

¶79 We review a trial court's decision to deny a reconsideration motion for an abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). Based on the record before the trial court and on appeal, we hold that the trial court did not err in its application of the law and it did not abuse its discretion when it denied Mitchell's motion for reconsideration.

## V. ATTORNEY FEES

¶80 Finally, Mitchell requests attorney fees for his appeal based on RAP 14.3(a) and RAP 18.1. He also requests a statutory attorney fee award under RCW 4.84.080(2). Because Mitchell is not the prevailing party, we do not award him the statutory attorney fee, attorney fees, or any other costs. *See* RCW 4.84.030; RAP 14.2, 18.1. As the prevailing party, the State may, of course, seek to recover its costs. RAP 14.2, 14.3.

¶81 We affirm.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

Review denied at 169 Wn.2d 1012 (2010).