IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERIC HOOD,<br><br>    Appellant,<br><br>  v.<br><br>THE CITY OF LANGLEY,<br><br>    Respondent. | No. 86686-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAz, J. — Eric Hood sued the City of Langley (City), alleging it violated the Public Records Act (PRA), chapter 42.56 RCW, when it determined he had abandoned his request by not paying the copying fees. The court dismissed the action, and Hood unsuccessfully moved pro se under CR 60(b)(3)-(b)(4) to vacate the dismissal, claiming inter alia new evidence demonstrated the City knew Hood had not received the fees notice. We affirm the court's denial of Hood's CR 60 motion.

I.  BACKGROUND

In January 2020, Hood sent the City a PRA request for records related to its termination of its police chief. On May 7, 2020, the City sent Hood an e-mail from the City's records@langleywa.org address (hereinafter, the records address), informing him it was ready to produce various documents if he paid the required

fees. Over the next several days, the City received four automated error messages from their e-mail delivery system (Whidbey.net), each stating (a) "the message has not yet been delivered," (b) "[n]o action is required on your part," and (c) "[d]elivery attempts will continue" until ultimately the "delivery software will give up, and when that happens, the message will be returned to you."

Prior to the last of these messages, on May 11, 2020, the City re-forwarded to Hood the May 7th e-mail and informed him of the above errors. One week after the last of the automated messages, on May 19, 2020, the City mailed Hood a letter explaining that it has "attempted to reach [him] by email on more than one occasion . . . only to receive notification that [his] email delivery failed," and that the City "continues to review documents in response to your [January 2020 PRA request]."

On May 21, 2020, Hood e-mailed the City at its records address, acknowledging he had received the letter and claiming that he has "had no indications that the emails were not reaching [him]" and requested the City "forward" him the above four error messages. On May 27, 2020, the City complied and sent Hood an e-mail which "attached the four (4) notices dated between May 8th and May 12th" and asked Hood to confirm whether he received the May 7th e-mail. Administrators at the City stated in a sworn declaration that they did not receive an automated message indicating the May 27th e-mail had not been delivered, and did not receive payment or any further response from Hood.

On or about June 10, 2020, the City closed Hood's PRA request as "abandoned" after Hood's lack of communication and failure to pay the fee.

2

In April 2021, Hood filed a pro se complaint against the City, generally arguing it violated the PRA by failing to adequately provide him the documents which were ready on May 7th (a.k.a., the "first installment"). Thereafter, Hood obtained counsel and the City resumed its response to his request.

In September 2021, the City sent Hood an e-mail from its records address informing him he would receive a first installment of 549 pages, when he paid a fee of $54.90. Hood claims this e-mail is the first time he learned of the City's fee requirement, which he "promptly" paid.[1]

In November 2022, the City moved to dismiss Hood's complaint. The trial court granted the motion in February 2023 and made numerous findings.

First, the court found that the e-mail of "May 7, 2020 was never 'returned' to the City nor did the City receive a message advising that the email server software had 'given up' in its attempts to deliver." Second, the court found that the City "emailed Mr. Hood again on May 11, 2020, and advised him of the email issue and provided him with a copy of the May 7, 2020, email" and there "was no issue with the delivery of this email." Finally, the court found that the City "provided the requested" four error messages for the May 7th e-mail "in an email dated May 27, 2020," and there "were no issues with the delivery of this email." Taken together, the court found that the City placed Hood on notice of the fee requirement and that he abandoned his request by failing to pay the copying fees or otherwise communicate.

---

[1] Hood similarly claims prompt payments for two additional installments by February 2022.

In June 2023, Hood sent the City a new PRA request, asking for documents relating to the e-mails sent to him from the records address after January 1, 2020. After he received the City's responses to this request, Hood moved pro se for relief under CR 60(b)(3) and CR 60(b)(4) in February 2024. As will be elaborated below, Hood claimed he obtained new evidence showing both the May 7th e-mail failed to be delivered and the City misrepresented its knowledge of this failure. He further claimed this evidence showed he "could not reasonably be expected to respond to" any of the above discussed e-mails from the records address. The court denied his motion in April 2024. Hood now appeals pro se.[2]

## II.    ANALYSIS

We have long held that pro se litigants are bound by the same rules of procedure and substantive law as licensed attorneys. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006); In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (noting courts are "under no obligation to grant special favors to . . . a pro se litigant."). Thus, a pro se appellant's failure to "identify any specific legal issues . . . cite any authority" or comply with procedural rules may still preclude appellate review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999).

Here, Hood's notice of appeal lists only the denial of his CR 60 motion.

---

[2] Hood moved for this court to take "judicial notice" of materials from separate matters and other public records. We decline his request as this information is either immaterial or readily accessible in the record.

Hood and the City each moved to strike various portions of the other's briefs. We deny both motions as the commissioner of this court did. We, however, grant Hood's motion for an overlength brief.

Further, his appellate briefing only substantively assigns error to the trial court's denial of his CR 60 motion. In turn, we will consider only issues related to his CR 60 motion, not the court's underlying dismissal of Hood's PRA suit. State v. Gaut, 111 Wn. App. 875, 881, 46 P.3d 832 (2002) ("[A]n unappealed final judgment cannot be restored to an appellate track by means of moving to vacate and appealing the denial of the motion."); In re Vulnerable Adult Pet. of Winter, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020) ("CR 60(b) motion is not a substitute for appeal and does not allow a litigant to challenge the underlying judgment.").

A.    Hood's CR 60 Motion

"On motion . . . the court may relieve a party . . . from final judgment, . . . or proceeding" for 11 listed reasons. CR 60(b). Two are asserted here. First, a court may grant such relief if a party demonstrates the existence of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)."[3] Id. at (b)(3). Second, a court may grant such relief for "[f]raud," "misrepresentation, or other misconduct of an adverse party." Id. at 60(b)(4).

CR 60(b) relief is an "[e]xtraordinary" remedy. Dalton v. State, 130 Wn. App. 653, 665, 124 P.3d 305 (2005). Indeed, "[f]inality of judgments is a central value in the legal system" and CR 60 represents the "limited circumstances under which a judgment may be vacated." Shandola v. Henry, 198 Wn. App. 889, 895, 396 P.3d 395 (2017).

---

[3] CR 59(b) states a "motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision."

5

"We review a trial court's decision on a motion to vacate under CR 60(b) for abuse of discretion."[4] Mitchell v. Wash. Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). "'An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons.'" Id. (quoting Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). In turn, a court abuses its discretion when its decision was unsupported by the record, utilizes the wrong legal standard, or otherwise "'adopts a view that no reasonable person would take.'" Id. at 821-22 (internal quotation marks omitted) (quoting State v. Lewis, 115 Wn.2d 294, 298–99, 797 P.2d 1141 (1990)).

1. CR 60(b)(3): New Evidence

"Courts will grant a motion to vacate the judgment under CR 60(b)(3) when newly discovered evidence '(1) would probably change the result if a new trial were granted, (2) was discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching.'" Coogan v. Borg-Warner Morse Tec Inc., 197 Wn.2d 790, 821, 490 P.3d 200 (2021) (quoting Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013)). Hood must establish *all* five factors to receive CR 60(b)(3) relief. Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88, 60 P.3d 1245

---

[4] Hood argues we should consider this matter de novo. He primarily relies on Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 327 P.3d 600 (2013). His reliance is inapposite as that matter was a direct appeal of a PRA order, not a CR 60 order. Id. at 427-28. Further, Hood's argument is entirely undermined by Mitchell v. Wash. Inst. of Pub. Policy, 153 Wn. App. 803, 225 P.3d 280 (2009). There, this court reviewed a CR 60 motion for abuse of discretion even when the appeal also involved the PRA. Id. at 809-10, 821.

(2003). Hood establishes only one of these factors and perhaps most clearly fails to establish the third factor, where we begin our analysis.

Hood's "newly discovered" evidence appears to fit within two to three categories. First, he offers e-mails purporting to show the City knew that the e-mails from its records address were actually not delivered. Second, he offers opinions from individuals Hood describes as "Microsoft Support" and a "computer forensics expert."[5] Hood also seems to claim that the City misled him and the trial court by concealing the City's code provision which, at the time of his request, required costs of reproduction of public records be paid at the time of the request.[6]

Even setting aside evidentiary issues presented by the above evidence, Hood plainly fails to explain how each "could not have been discovered before" the trial by the exercise of "due diligence." CR 60(b)(3). To illustrate, he could have more proactively submitted a new PRA request, contacted support technicians, or researched the City's publicly available code, among other readily accessible avenues. As this court explained in Vance v. Thurston County Comm'rs, a "mere allegation of diligence is not sufficient; the moving party must state facts that explain why the evidence was not available for trial." 117 Wn. App. 660, 671, 71 P.3d 680 (2003).

Here, Hood argues the "City's scheduling of its motion prevented [his] discovery" and "the trial court would not permit [him]" to conduct discovery. He

---

[5] Hood also references a "technician at the Whidbey Telecom" but acknowledges they "refused to provide written testimony about City."

[6] Hood refers to the former version of City Code 2.10.050C, the contents of which the parties do not dispute. And as will be explained below, its contents are wholly immaterial under the PRA.

provides no substantive discussion or citation to the record for either proposition. In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (noting courts are not obligated "to comb the record" where a party fails to support arguments with citations to the record).

Hood also argues he "should not have been expected to conduct discovery, especially having been assured that he had been provided all relevant e-mails regarding his [January 2020 request]." His argument is belied by Vance, which involved PRA "requests two and a half years after [an earlier] request." 117 Wn. App. at 671. There, this court explained that, "[a]s to the new documents, they were provided in response to new and different requests, and [the requestor] has *not explained why he could not have made those requests before the [relevant] hearing*." Id. (emphasis added). The same is true here.

Further, Hood's June 2023 request concerned his communications with the City since January 1, 2020, while earlier PRA requests, including the one in January 2020, concerned documents relating to the City's police chief. After all, "if a public record is created or comes into the possession of the agency after the request is received by the agency, it is not responsive to the request and need not be provided. A requestor must make a new request to obtain subsequently created public records." WAC 44-14-04004(4).

Thus, we hold Hood does not satisfy the third factor of CR 60(b)(3).

Hood's arguments as to the first, fourth, and fifth[7] factors are also insufficient as they contain little, if any, substantive discussion or citation to

---

[7] We do not address the second factor as the City appears to concede it.

authority or the record. Lint, 135 Wn.2d at 532. His arguments fail on the merits regardless. First, Hood's proffered evidence does not explain why the record would change the result of the court's ruling, is material, or is simply not cumulative, as there is no evidence the e-mails from May 11th and 27th forwarding the May 7th e-mail were bounced back and, yet, Hood did not pay the fee. See W. Cmty. Bank v. Grice, 55 Wn. App. 290, 294, 777 P.2d 39 (1989) (noting CR 60(b) relief requires more than a "bare assertion."). Second, the City's code is entirely consistent with the PRA, which allows agencies to impose a "reasonable charge" for "providing copies." RCW 42.56.120. And there is no authority for the proposition that an agency must inform a requestor at a certain time or way or commit a PRA violation. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Thus, the court did not abuse its discretion in denying Hood's CR 60(b)(3) motion because he failed to establish each of the factors above. Go2Net, 115 Wn. App. at 88; Mitchell, 153 Wn. App. at 821.

### 2. CR 60(b)(4): Misrepresentation

"Relief under CR 60(b)(4) is appropriate when the party challenging the judgment 'establish[es] . . . by *clear and convincing* evidence' that it 'was prevented from *fully and fairly* presenting its case or defense' due to 'fraud, misrepresentation, or other misconduct of an adverse party.'" Coogan, 197 Wn.2d at 821 (emphasis added) (some alterations in original) (quoting Lindgren v.

9

Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990)). "Clear and convincing evidence is that which shows the ultimate fact in issue to be *highly probable*." Winter, 12 Wn. App. 2d at 830 (emphasis added).

Hood first recycles and cross-references one of the arguments he made in support of his CR 60(b)(3) claim, stating that "[b]ecause City did not require Hood's immediate payment in violation of City Code, [Br. of Appellant Section] IV:B, City's initial response violated the PRA." Armed with this faulty assumption, Hood then spends the next several pages of his brief stating in a conclusory manner that the "City's failure to provide this information to the trial court and attempt to conceal it from Hood showed misconduct." At no point does Hood cite to evidence in the record supporting that serious claim. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992) (holding that the court is not required to search the record to locate the portions relevant to a litigant's arguments).

Even if we go back to the evidence accompanying Hood's CR 60 motion below, where he also claimed the City "knew that its emails from [the records address] were not delivered to [him]" and "misrepresented . . . that they were delivered"—the numerous e-mails he cites from the City's attorney or employees show no such thing.

First, Hood's CR 60 motion cites various e-mails between him and the City or its counsel. All of these e-mails are inapposite. The October 2021 e-mails with the City's then counsel concern the City's renewed attempts to respond to a request he sent after filing his suit and e-mails received in September 2021, not

the specifics of the May 2020 e-mails.[8]  The summer 2023 e-mails with the City's then counsel primarily concern the logistics of responding to Hood's June 2023 request, including hiring outside "information technology expertise."  The January 2024 e-mails with the City's then counsel involved *Hood* requesting that the City's counsel ask the City "why so many emails from [the records address] were bounced back, i.e., to do what it should have done in May of 2020 after receiving multiple bounce backed emails and my communication informing it that there was a problem,"  to which the City's counsel responded for him to "consult[ his] own service provider."  In short, the generalized statements within these e-mails do not establish it was "highly probable" the City specifically knew the May 7th e-mail failed to send and misrepresented said knowledge.  Winter, 12 Wn. App. 2d at 830.

Second, in a slightly different vein, Hood's CR 60 motion also cites various internal City e-mails.  These e-mails discuss the four error messages for the May 7th e-mail, including that the employee responding to his request "ha[d] not had any response back from [Hood] to date" on May 18, 2020.  These e-mails perhaps show the City knew Hood had not yet responded to the May 7th e-mail, and thus explain why it sent its May 19, 2020, letter.  However, these e-mails do not establish Hood never received the May 7th e-mail (either directly or forwarded), that the City knew of that failure, or that the City received more than four error

---

[8] At most, these e-mails contain a statement from the City's attorney that "I've also confirmed with the City that no other emails were sent to you regarding the January 30, 2020 request aside from the ones I already forwarded, nor did they receive any bounce backs."  This generalized statement does not establish it was "highly probable" the City specifically knew the May 7, 2020, e-mail entirely failed to send and misrepresented said knowledge.  Winter, 12 Wn. App. 2d at 830.

messages for the May 7th e-mail or any other e-mail. And, to the extent Hood relies on some subject lines reading "[n]otice of undeliverable email to Eric Hood," such vague wording does not make the existence of any error beyond the four error messages recounted above "highly probable." Winter, 12 Wn. App. 2d at 830.

The above evidence, at best, shows that the City was aware there may have been an issue with the delivery of the e-mails. However, the court did not abuse its discretion in finding Hood did not establish the "ultimate fact in issue to be highly probable," i.e., that the City knew he did not receive the May 7th e-mail. Winter, 12 Wn. App. 2d at 830.

Similarly, Hood's reliance on opinions from "Microsoft Support" and a "computer forensics expert" is also inapposite. First off, both opinions utilize equivocal or uncertain language, including "Microsoft Support" stating it is *likely* [he was] removed from the mailing list" and his "computer forensics expert" who said the error messages "*could* lead one to believe that if the Whidbey mails server never returned the email then it went through" but "this is *not always* the case" and that he has "reason to believe that Mr. Eric Hood did not actually receive the email dated May 7, 2020."[9] (Emphasis added.) These equivocal assertions do not meet the "highly probable" standard required here. Winter, 12 Wn. App. 2d at 830.

Moreover, the above evidence and testimony are limited to the four error

---

[9] The declaration of Hood's computer forensic expert also offered second-hand hearsay purportedly from Whidbey Telecom technical support. Even setting aside the evidentiary issues of this testimony, it also does not specifically explain how Hood could not have received the May 11th and 27th e-mails, each forwarding the May 7th e-mail. Id.

messages, specifically with regard to the May 7th e-mail. Again, this evidence does not address why Hood was not put on notice by the May 11th and 27th e-mails forwarding the May 7th e-mail, for which the record shows no error messages.

As a final note, CR 60(b)(4) "is aimed at judgments [which were] *unfairly obtained*," not at those which are "factually incorrect." Sutey v. T26 Corp., 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020) (emphasis added) (citing Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)). In turn, CR 60(b)(4) is not an avenue for someone "who slept on [their] rights" as that "would clearly undermine the salutary purposes served by finality of judgments." Hickey, 55 Wn. App. at 371. Here, Hood does not explain how the above evidence, the majority of which concerned e-mails in his possession or opinions from individuals he could have reached out to at any time, establishes he was prevented from "fully and fairly presenting [his] case." Coogan, 197 Wn.2d at 821.

For the reasons above, we hold Hood failed to present "[c]lear and convincing evidence . . . show[ing] the ultimate fact in issue to be highly probable." Winter, 12 Wn. App. 2d at 830. In turn, we hold the court did not abuse its discretion by denying CR 60(b)(4) relief. Mitchell, 153 Wn. App. at 821.

B.     Attorney Fees and Sanctions

Hood requests appellate fees under RCW 42.56.550(4). We deny this request as RCW 42.56.550(4) states he "shall be awarded all costs, including reasonable attorney fees" only if he "prevails against an agency," which he does

not here.[10]

Both parties moved for appellate sanctions under two authorities. First, each cites RAP 10.7 which provides this "court will ordinarily impose sanctions on a party or counsel for a party who files a brief that fails to comply with these rules." Second, each cites RAP 18.9, which provides in pertinent part that this "court . . . on motion of a party may order a party or counsel . . . who . . . files a frivolous appeal . . . to pay compensatory damages . . . or . . . sanctions." We decline to impose sanctions under either authority on either bases.

III.     CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Feldman, J.                    Chung, J.

---

[10] The parties disputed whether a pro se party can receive fees under RCW 42.56.550(4). As Hood does not prevail on appeal under RCW 42.56.550(4), we need not reach this question. Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007).

14