IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CAPTAIN BRUCE NELSON, | No. 69890-7-I |
| Appellant, | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON and WASHINGTON STATE BOARD OF PILOTAGE COMMISSIONERS, | UNPUBLISHED OPINION |
| Respondents. | FILED: October 28, 2019 |

CHUN, J. — In this linked appeal, Captain Bruce Nelson claims that the trial court erred by denying his motion to vacate its summary judgment order.[1] After the court dismissed his claims on summary judgment, Nelson discovered, through a Public Records Act (PRA) request, an Excel spreadsheet that projected certain trainees' retirement dates ("manpower spreadsheet"). Nelson moved to vacate the summary judgment order under CR 60(b)(3) and (b)(4). The trial court denied the motion, concluding that the evidence was not new and that the Washington State Board of Pilotage Commissioners (Board) did not commit misconduct. For the reasons discussed herein, we affirm.

---

[1] This appeal is linked to Nelson v. Wash. State Bd. of Pilotage Comm'rs, No. 68701-8, which is Nelson's appeal of the trial court's summary judgment order.

## I. BACKGROUND[2]

### A. The PRA Request

In April 2008, the Trainee Evaluation Committee (TEC) (established by the Board) recommended the Board not license Nelson as a pilot. Before the Board made its decision, it allowed Nelson to present documentation to the Board regarding why it should decide otherwise. To prepare for the presentation, Nelson submitted a PRA request to the Board on April 29, 2008, seeking his "complete training file, including materials reviewed by the [TEC] and information that has been provided to the Commissioners." The Board did not produce the manpower spreadsheet in response to the request. Nelson presented to the Board in October 2008. In December 2008, the Board denied Nelson a pilot's license.

### B. The Administrative Proceeding

In December 2008, Nelson requested an administrative hearing to contest the Board's decision.

In connection with that hearing, on October 30, 2009, Nelson served several subpoenas duces tecum on various Board members. The subpoenas requested that the witnesses bring to their depositions the following:

ALL DOCUMENTS, ELECTRONIC RECORDS AND OTHER THINGS in your possession or control, THAT RELATE IN ANY WAY TO evaluation, testing, recommending, voting about, considering, training, licensing, or denying training or licensing; in relation to trainees Klapperich, Jones, Sweeney, Bujacich, Nelson, Sliker, Kelly, Seymour, Semler, Thoreson,

---

[2] Additional background information is provided in the opinions from the linked case, Nelson, No. 68701-8, and Nelson's administrative appeal, Nelson v. Wash. State Bd. of Pilotage Comm'rs, No. 75559-5-I, (Wash. Ct. App. Dec. 11, 2017) (unpublished) http://www.courts.wa.gov/opinions/pdf/755595.pdf.

Hannuksela, Marmol, Grobschmit, Kalvoy, Carlson, Ward, or Wilde; including but not limited to all communications from or to any person or entity (including but not limited to any Board of Pilotage Commissioners, its agents, staff or officials, and the Puget Sound Pilots organization, members, or their agents), about each such trainee.

None of the witnesses provided the manpower spreadsheet in response to the subpoenas. On April 13, 2010, the administrative law judge (ALJ) issued an order upholding the Board's decision to not license Nelson.[3]

C. This Civil Action

In September 2010, while waiting for the Board to issue a final order in the administrative action, Nelson filed this civil action against the State of Washington and the Board, alleging age discrimination under the Washington Law Against Discrimination (WLAD).

A year later, on September 23, 2011, the defendant moved for summary judgment. On November 23, 2011, while the summary judgment motion was pending, Nelson served discovery requests. Nelson's Request for Production (RFP) No. 7 asked the defendants to "produce any documents related to any and all Pilot retirement 'surveys' as such term is used in Board and TEC minutes. To the extent available, please produce all such documents in their original electronic form, with metadata intact." RFP No. 8 requested "any documents related to any and all Pilot 'manpower' worksheets, spreadsheets, or other 'manpower' documents, as such term is used in

---

[3] This court affirmed the administrative order upholding the Board's decision. Nelson, No. 75559-5-I, slip op. at 27. The Washington State Supreme Court denied Nelson's subsequent petition for review on June 6, 2018, cause no. 95540-9.

3

Board and TEC minutes. To the extent available, please produce all such documents in their original electronic form, with metadata intact."

The defendants responded to Nelson's discovery requests on December 23, 2011. In response to RFP No. 7, the defendants stated "**Objection**, this request exceeds the scope of CR 26(b)(1) in that it can lead to no information relevant to the Plaintiff's claims. Further, **objection,** the requested information intrudes on the privacy of licensed pilots. Without waiving objections, see **Attachment C**, Pilot Retirement Surveys, numbered 95010001-019." In response to RFP No. 8, the defendants stated as follows:

> **Objection**, this request exceeds the scope of CR 26(b)(1) in that it can lead to no information relevant to the Plaintiff's claims. Further, **objection,** the requested information intrudes on the privacy of licensed pilots.
>
> Without waiving these objections, Defendant has contacted Plaintiff, and he has agreed to sign a protective order prohibiting disclosure of the dates of birth of the licensed pilots. Accordingly, Defendant will produce responsive documents upon entry of an appropriate protective order.

On January 13, 2012, the court held a hearing on the motion for summary judgment. The court determined that a certified administrative record should be a part of the court file and requested the parties to reach an agreement on the contents of such a record. The court heard oral argument on February 3, 2012. At the hearing, the defendant's attorney stated, "The testimony in front of the ALJ was they didn't know [Nelson's] age. Nobody knew. None of the pilots out there knew how old they were."

On March 25, 2012, Nelson's attorney sent an email to the defendants' counsel requesting the manpower spreadsheet. The next day, March 26, 2012, the defendants'

attorney responded that he would have a Board representative sign a protective order if Nelson's lawyer drafted one and sent it to him. Later that day, Nelson's attorney emailed a proposed protective order and a Board representative signed it and emailed it back to Nelson. The defendants told Nelson it would produce the document once he confirmed that he had filed the order.[4]

Two days later, on March 28, 2012, the trial court dismissed Nelson's claims on summary judgment. The defendants believed this ended their discovery obligations.

On March 29, 2012, Nelson sent confirmation to the defendants that the court had signed and entered the protective order, and asked when he could expect to receive the records. The defendants do not appear to have responded.

Also on March 29, 2012, Nelson submitted a PRA request for the manpower spreadsheet. In December 2012, the Board produced the document in response to the request. The manpower spreadsheet is "an excel spreadsheet authored and maintained by Puget Sound Pilots who were, at different times, members of the Trainee Evaluation Committee (TEC). It contains three tabs named (1) 'Projection', (2) 'Retirement Survey 3-07' and (3) 'Trainee List'."

On January 17, 2013, Nelson moved to vacate the summary judgment order under CR 60(b)(3) and (b)(4). Nelson claimed the manpower spreadsheet constituted newly discovered evidence and that the defendants' counsel committed misconduct by misrepresenting to the court that the Board members did not know Nelson's age.

---

[4] The defendants told Nelson in an email, "Once we have confirmation by you that [the protective order] has been filed, we will remit the docs."

5

On January 29, 2013, the court denied Nelson's motion to vacate the summary judgment order. The court ruled the evidence was not newly discovered and that the defendants did not commit any misconduct.

Nelson appeals.[5]

## II. ANALYSIS

We review a "trial court's decision on a CR 60(b) motion for an abuse of discretion." Vance v. Offices of Thurston County Comm'rs, 117 Wn. App. 660, 671, 71 P.3d 680 (2003). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Vance, 117 Wn. App. at 671.

### A. CR 60(b)(3) - Newly Discovered Evidence

Nelson argues the manpower spreadsheet constitutes newly discovered evidence. The defendants claim Nelson did not act diligently to obtain the document prior to summary judgment. We conclude the trial court did not abuse its discretion by determining that the manpower spreadsheet is not newly discovered evidence.

Under CR 60(b)(3), "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding" if a party finds "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)." To vacate a judgment under CR 60(b)(3), a party must demonstrate "the evidence (1) would probably change the result if a new trial were granted, (2) was discovered since trial, (3) could not have been discovered before the

---

[5] We stayed this matter until the parties resolved the administrative case on June 29, 2018. Our Supreme Court further stayed this case in connection with Nelson's motion to supplement the record, which stay was lifted on March 6, 2019.

trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Parties may not merely allege that they acted diligently, but must explain why they did not discover the evidence previously. Vance, 117 Wn. App. at 671.

Nelson fails to show he could not have discovered the document by the exercise of due diligence, and he thus does not satisfy the third element. Nelson sent his first discovery request related to the manpower spreadsheet in November 2011. In December 2011, the defendants responded that they spoke with Nelson and would produce the documents once he filed a protective order. Though Nelson and the defendants agreed in December that the defendants would produce the manpower spreadsheet once Nelson filed a protective order, Nelson waited three months to seek entry of the order. Had Nelson filed the protective order in December 2011, he presumably would have had the manpower spreadsheet three months before the entry of summary judgment.

When Nelson finally sent the protective order to the defendants, the defendants were responsive and signed it the same day. Nelson, however, did not confirm that he had filed the protective order until the day after the trial court's summary judgment order. Because the court had granted the defendants' motion for summary judgment, they justifiably believed their discovery obligations had ended and did not produce the record. Additionally, as the defendants note, Nelson could have filed a CR 56(f) motion to continue the case until further discovery could take place, but did not. In light of the

foregoing, Nelson could have obtained the evidence prior to the summary judgment order had he acted with due diligence. Indeed, Nelson neglects to explain why he waited three months to file the protective order.

Because Nelson could have obtained the manpower spreadsheet had he acted diligently with regard to the discovery process in his civil suit, the trial court did not abuse its discretion by denying the motion to vacate under CR 60(b)(3).

B. CR 60(b)(4) - Fraud, Misrepresentation, or Other Misconduct

Nelson asserts the defendants committed misconduct by (1) stating to the court that no one on the Board knew Nelson's age, and (2) not turning over the manpower spreadsheet in response to RFP No. 7. The defendants contend Nelson requested the manpower spreadsheet in RFP No. 8, and their timely objection defeats any allegations of misconduct. We agree with the defendants.

CR 60(b)(4) gives courts the power to vacate judgments for fraud, misrepresentation, or other misconduct of an adverse party. To justify vacating the judgment, "the fraudulent conduct or misrepresentation must *cause* the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). The party requesting relief under CR 60(b)(4) must demonstrate that the other party committed misconduct by clear and convincing evidence. Lindgren, 58 Wn. App. at 596. To grant relief, the trial court does not need to consider the probable effect of the

misconduct on the case's outcome. <u>Mitchell v. Wash. State Inst. of Pub. Policy</u>, 153 Wn. App. 803, 825, 225 P.3d 280 (2009).

Nelson fails to present clear and convincing evidence that the defendants committed misconduct by asserting that no one on the Board knew Nelson's age. The defendants contend the Board looked only at the first tab of the manpower spreadsheet, which does not list the trainee's birthdates. Additionally, at least one member of the Board testified that he did not know Nelson's age when he voted to not license Nelson. Nelson does not present any evidence otherwise. As such, Nelson does not produce clear and convincing evidence that the defendants made any misrepresentation to the court.

The trial court also properly determined the defendants did not commit misconduct when they did not produce the manpower spreadsheet in response to RFP No. 7. The defendants timely objected to RFP No. 7 and Nelson did not pursue the manpower spreadsheet under that request. Rather, the defendants' discovery responses and emails with Nelson show the parties discussed the manpower spreadsheet as being produced in response to RFP No. 8. In response to RFP 8, the defendants timely objected and agreed to turn over responsive documents "upon entry of an appropriate protective order." Nelson agreed that the defendants could wait until he filed a protective order to produce the manpower spreadsheet. Based on the record, Nelson's argument that the defendants committed misconduct in not producing the manpower spreadsheet in response to a different RFP and with no protective order on

9

No. 69890-7-I/10

file is not compelling. Thus, we determine the trial court did not abuse its discretion when it found the defendants did not commit any misconduct and refused to vacate its summary judgment order.[6]

Affirmed.

_Chun, CJ._

WE CONCUR:

_Andrus, J._

_Verellen, J._

---

[6] Nelson's request for attorney fees consists of the following sentence: "Pursuant to RAP 18.1 and RCW 49.60, *et seq.*, Capt. Nelson hereby requests an award of attorney's fees and costs for this appeal." RAP 18.1 "requires more than a bald request for attorney fees on appeal. Argument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees as costs." Stiles v. Kearney, 168 Wn. App. 250, 267, 277, P.3d 9 (2012) (internal citation omitted). Additionally, Nelson does not make any argument for fees under RCW 49.60, or even state which section of RCW 49.60 he seeks relief under. See RAP 10.3 (requiring the written argument to contain "citations to legal authority and references to relevant parts of the record"). Because Nelson fails to provide any grounds for a fee award on appeal, we deny his request.