[No. 26113–4–I.   Division One.   April 29, 1991.]

CHESTER W. CLIPSE, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Wayne R. Parker, Jr.*, for appellant.

*Timothy D. Blue* and *Williams, Kastner & Gibbs*, for respondents.

WEBSTER, J.—Chester W. Clipse and his attorney, Wayne R. Parker (hereinafter Clipse) appeal a superior court order requiring him to reimburse the respondents' costs and attorney fees under CR 11 based on a finding that Clipse

made "misleading and inaccurate disclosures of expert witnesses." Clipse asserts that the trial court erred in imposing terms under CR 11 because: (1) CR 11 does not apply to pretrial disclosures, (2) his disclosure was not misleading or inaccurate, and (3) the judgment erroneously awarded amounts respondents already claimed in a separate cost bill. We affirm based on CR 26(g).

## FACTS

Clipse brought a medical malpractice action, claiming University Hospital negligently administered the drug Valium to him while he was hospitalized there, and that he suffered an allergic reaction as a result. Pursuant to a discovery order dated May 23, 1989, Clipse was to "identify each of his experts *he expect[ed] to call at trial, along with a summary of the expected opinions of each and the basis upon which such opinions are made*" by June 16, 1989. (Italics ours.) The order provided that all discovery, "including the taking of depositions of all experts," was to be completed by August 11, 1989. Clipse designated six doctors, a nurse, and a medical records supervisor as expert witnesses and provided a brief summary of the testimony of each expert. The respondents deposed two of the designated doctors, the nurse, and the medical records expert. Based on these depositions, the respondents filed a CR 11 motion against Clipse and his attorney seeking reimbursement of expenses resulting from "frivolous disclosure" of these experts. The motion was stayed when Clipse elected to submit his claim to arbitration. The arbitration resulted in a judgment in the State's favor.

Following the arbitration, the respondents renewed their CR 11 motion in superior court. They claimed that Clipse had neither contacted the designated experts, asked them to testify at trial, nor provided them with records or depositions upon which they could form an expert opinion. The respondents further claimed that when they deposed Clipse's designated experts, they expressed no expert opinions and did not testify as Clipse stated they would.

Respondents contended that as a result of Clipse's failure to make a reasonable inquiry, they incurred substantial unnecessary expenses. The Superior Court granted respondents' motion for CR 11 sanctions and awarded $3,873.15.

## THE PROPRIETY OF THE SANCTION AWARD

■ Clipse contends that CR 11 does not apply to discovery disclosures. CR 11 applies to "every pleading, motion, and legal memorandum". Since Clipse's discovery disclosure is neither a complaint, an answer, a reply to a counterclaim, an answer to a cross claim, a third party complaint, or a third party answer, it is not a "pleading" under CR 7(a). *See* Black's Law Dictionary 1037 (5th ed. 1979) (defining "pleadings" and citing Fed. R. Civ. P. 7(a)). The term "legal memorandum" might be broad enough to encompass a discovery disclosure.[1] However, the advisory notes to the 1983 amendments to federal rule 11 indicate that rule 26(g) should govern discovery disclosures.[2] We, therefore, conclude that Clipse's discovery disclosure is neither a "pleading, motion, or legal memorandum" under CR 11 and that the trial court erred in awarding sanctions under CR 11.

---

[1]Although we do not define the parameters of the term "legal memorandum" in this case, we think the term more logically refers to briefs or other papers filed in support of pleadings or motions. *Cf. Miller v. Badgley*, 51 Wn. App. 285, 299 n.10, 753 P.2d 530 (use of the term "legal memorandum" in CR 11 as opposed to "other papers," the term used in rule 11 of the Federal Rules of Civil Procedure, suggests that the Washington rule applies in fewer circumstances than the federal rule), *review denied*, 111 Wn.2d 1007 (1988). The breadth of the federal rule is illustrated by *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, ___ U.S. ___, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991), in which the Court affirmed an award of rule 11 sanctions based on *affidavits* submitted by Business Guides in support of motion for a restraining order.

[2]Unlike CR 11, which applies to "every pleading, motion, and *legal memorandum*," rule 11 of the Federal Rules of Civil Procedure applies to "[e]very pleading, motion, and *other paper*." (Italics ours.) The advisory notes indicate that, although the term "other papers" is broad enough to encompass discovery papers, rule 26(g) should govern discovery certificates. 2A J. Moore, *Federal Practice* ¶ 11.01[4] (2d ed. 1989).

██ Nonetheless, we evaluate the propriety of the sanctions against Clipse under CR 26(g). A trial court judgment may be affirmed by any basis supported by the record. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). CR 26(g) applies to every "request for discovery or response or objection thereto". Similar in wording to CR 11, CR 26(g) authorizes an award of costs and attorney fees as a sanction for a party's failure to comply with the rules of discovery. CR 26(g) provides that an attorney or party who signs a "request for discovery or response or objection thereto" certifies that

> to the best of his [or her] knowledge, information, and belief formed after a *reasonable inquiry* it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) *not unreasonable* or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

(Italics ours.) CR 26(g) follows rule 26(g) of the Federal Rules of Civil Procedure and was adopted in Washington in 1985. The Washington courts have produced no case law construing this provision; however, the advisory committee notes to the federal rule offer some guidance. Fed. R. Civ. P. 26(g) advisory committee notes. First, the rule imposes on the attorney a duty to make a "reasonable inquiry" into the factual basis of a response, request, or objection. Fed. R. Civ. P. 26(g) advisory committee note. This duty is satisfied

> *if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.* . . . In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case so long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

(Citation omitted. Italics ours.) Fed. R. Civ. P. 26(g) advisory committee note. The attorney's conduct is evaluated

under an objective test, "similar to the one imposed by Rule 11." Although the nature of the sanction is a matter of judicial discretion, the rule mandates imposing sanctions if they are appropriate under the rule. Fed. R. Civ. P. 26(g) advisory committee note.

The respondents contend that Clipse did not make a reasonable investigation before disclosing his expert witnesses and that the disclosure itself was inaccurate, misleading, and not reasonable under the circumstances. The experts designated by Clipse are treated separately below.

### Drs. Putsch and Preston

Clipse's "Designation of Plaintiff's Expert Witnesses" pursuant to the discovery order stated that Drs. Putsch and Preston would testify that they cautioned the hospital against administering Valium to Clipse because of his prior allergic reactions to the drug. It also stated they would testify about "the standard of care in the community regarding informed consent", and about Clipse's physical condition from the time he came under their care to the present.

The respondents deposed Dr. Preston on June 28, 1989. Dr. Preston testified that he had no familiarity with the lawsuit, had not reviewed any records pertinent to the lawsuit, and had no plans to testify. Dr. Preston also responded that he did not consider himself an expert regarding the standard of care of either an anesthesiologist or a cardiac surgeon.

Dr. Putsch was deposed on July 6, 1989. He testified that he had not been asked to formulate any expert opinions on any of the questions related to this particular lawsuit, and that he had no expert opinions to express on whether the surgery care provided Clipse at University Hospital was reasonably prudent and complied with the standard of care. He also testified that he had only reviewed "some" of the medical records. Presumably, Dr. Putsch reviewed only those records involving *his* treatment of Clipse, since he

testified that his knowledge of Clipse's heart surgery was based on what Clipse told him. As an aside during his testimony, Dr. Putsch asked Clipse's attorney whether he had ever asked Dr. Putsch to act as an expert witness. Clipse's attorney replied, "No, but I'm going to."

From these facts, the trial court could easily have found that Clipse's disclosures with respect to Drs. Preston and Putsch showed that Clipse or his attorney failed to make a reasonable inquiry as to the doctors' testimony, opinions, and the bases of those opinions, and that this failure misled the respondents.

### Michael Bonato

Clipse stated in his discovery disclosure that Bonato would testify about "the keeping of hospital records and how information contained in those records should be made available to hospital personnel, including registered nurses, house physicians, attending physicians, and consultants." When Bonato was deposed by the respondents' attorney, he testified that he had not been asked to provide any expert testimony. He also testified that he thought his role was to respond to a request for Clipse's records from Pacific Medical Center, and that he had neither worked at the records department at University Hospital nor was acquainted with its system of maintaining and providing records. Based on these facts, we conclude that Clipse or his attorney failed to make a reasonable inquiry, that Clipse's response was inaccurate, and that the respondents were misled.

### Paul Koelblinger

Clipse disclosed that Koelblinger would testify to "the standard of nursing care in the community, especially with regard to entries in hospital records, and the administration of medication with reference to information contained in the hospital records". Clipse did not state Koelblinger would testify to whether Nurse Cortese or others deviated from the standard in providing care to Clipse. Koelblinger

agreed to serve as an expert witness prior to being deposed. During his deposition, Koelblinger stated he had no criticisms to express of the care provided to Clipse by Nurse Cortese and could not recall whether he had any specific criticisms of any other nursing care provided to Clipse. The respondents apparently did not question Koelblinger about the proper standard of care.[3]

Clipse contends that there is no basis for finding that his disclosure was unreasonable or misleading. Respondents assert Clipse's statement that Koelblinger would testify to the standard of care necessarily implied that Koelblinger would testify to whether the standard was followed by Nurse Cortese and others. We do not agree with respondents on this point. We, therefore, find that the trial court erred in awarding sanctions with respect to Koelblinger.

## CONCLUSION

Clipse had an obligation to reveal the specific opinions his experts would testify to and the bases of those opinions so that the respondents would have an opportunity to discover those opinions and prepare their defense accordingly. Clipse claims that he made a reasonable inquiry because either he or his attorney contacted the above designated experts before disclosing them and summarized their anticipated testimony based on records reflecting their "knowledge." He also asserts designating these witnesses as "experts" because of their "specialized knowledge" was not misleading. Clipse's disclosure was misleading, however, because Clipse made no attempt to learn the *opinions* of certain designated experts, when the discovery order specifically required him to summarize the expected opinions of his expert witnesses and the bases for each of their opinions. Clipse's assertion that he could predict the opinions of his medical experts by reviewing the

---

[3]Neither party on appeal furnished a complete transcript of Koelblinger's deposition. Clipse stated in his brief that respondents did not question Koelblinger during his deposition about the proper standard of care. The respondents did not attempt to refute this assertion.

medical records himself when those records did not contain any stated opinions is untenable. Moreover, Clipse at no time made any attempt to revise his disclosures concerning his expert witnesses. Clipse's designated experts were not familiar with the issues and facts relevant to the lawsuit and had not formulated opinions relevant to the lawsuit when the respondents deposed them. Thus, with the exception of Nurse Koelblinger, Clipse's discovery disclosure was misleading and respondents' efforts toward deposing these individuals caused them unnecessary expenditures of time and money.[4]

## THE AMOUNT OF THE SANCTION

The affidavit of respondents' attorney, Timothy Blue, provided the basis for the amount of the trial court's sanction award. The trial court's judgment reflects the total of the amounts requested for Dr. Preston ($884), Michael Bonato ($416.20), Paul Koelblinger ($857.20), and Dr. Putsch ($1,715.75). Clipse asserts that he was already obligated to pay costs for the deposition of Dr. Putsch and that the sanction therefore is duplicative. A cost bill submitted by the State of Washington in the amount of $2,653.80 shows a charge for the deposition of Dr. Putsch in the amount of $1,715. Assuming that the sanction in the amount of $1,715.75 and the cost bill for approximately the same amount are duplicative, Clipse is only required to pay the cost of Dr. Putsch's deposition once.

The judgment as to Dr. Putsch, Dr. Preston, and Michael Bonato is affirmed; however, the judgment as to Nurse Koelblinger is reversed. There is no legal basis supporting

[4]Clipse's argument that discovery responses under CR 26(g) need not be "well grounded in fact" as required by CR 11 ignores that the response was unreasonable under the circumstances and unnecessarily increased the costs of litigation.

There is no need to address respondents' argument that the expert witnesses must be willing witnesses.

an award of attorney fees on appeal. However, respondents are entitled to interest as provided in RCW 4.56.110.[5]

GROSSE, C.J., and SCHOLFIELD, J., concur.

---

[5]We reject the respondents' claim that they are entitled to attorney's fees on appeal, since they have not demonstrated that Clipse's or his attorney's conduct in the course of the appeal would support a separate award of sanctions. *See Cooter & Gell v. Hartmarx Corp.,* __ U.S. __, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990); *Brandt v. Schal Assocs., Inc.,* 131 F.R.D. 512 (N.D. Ill. 1990). Respondents may, however, recover statutory attorney fees as costs pursuant to RAP 14.3.