

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEVIN P. CLARE, individually, | ) | No. 37702-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TELQUIST MCMILLEN CLARE PLLC, | ) | PUBLISHED OPINION |
| a Washington professional limited liability | ) | |
| company; GEORGE E. TELQUIST, an | ) | |
| individual; ROBERT G. MCMILLEN, an | ) | |
| individual; and ANDREA J. CLARE, an | ) | |
| individual, | ) | |
| | ) | |
| Appellants. | ) | |

STAAB, J. — Kevin Clare filed suit for legal malpractice against his estranged wife, Andrea Clare, her law partner, George Telquist, and their law firm, Telquist McMillen Clare PLLC.[1]  In his complaint, Mr. Clare asserted that Andrea Clare acted as his attorney and provided legal advice in renewing his pilot's license and then, years later, released confidential information to the guardian ad litem (GAL) in their divorce proceeding.  Mr. Clare voluntarily dismissed his suit before the court made any rulings on the merits of the case.  Telquist filed two motions for CR 11 sanctions against Mr. Clare

---

[1] To avoid confusion, we refer to Andrea Clare, George Telquist, and the Telquist law firm collectively as "Telquist" when possible.

No. 37702-4-III
*Clare v. Telquist, et al.*

and his attorneys. The first motion was filed before the case was dismissed and pertained

to a witness disclosure statement and a declaration. The second motion was filed after

the case was dismissed and claimed that the complaint was frivolous. In the second

motion, Telquist also sought a judgment for damages under the anti-SLAPP[2] statute. The

trial court denied both motions. In separate orders, the court determined that the witness

disclosure statement and declaration did not fall within the parameters of CR 11, that the

anti-SLAPP defense did not apply, and that the complaint was not frivolous.

We affirm the trial court and hold that while the two motions for CR 11 sanctions

were timely, the request for damages under the anti-SLAPP statute, filed after the case

was dismissed, was untimely. In addition, we affirm the trial court's denial of sanctions,

holding that a stand-alone declaration does not qualify as a "pleading, motion, or legal

memorandum" for purposes of CR 11 and the complaint was not frivolous.

BACKGROUND

Andrea Clare is an attorney. Kevin Clare is employed as a crop duster pilot and

has renewed his pilot license with FAA[3] form 8500 every three years since 1999 (except

for one gap in 2005). They married on June 25, 2005, and separated in 2016.

Mr. Clare alleges that in 2008, the FAA renewal form changed. Instead of seeking

conviction information, the new form sought arrest information of anyone renewing their

---

[2] Strategic lawsuits against public participation. RCW 4.24.510.
[3] Federal Aviation Administration.

2

license. Since he had been arrested in 1998 for a DUI,[4] Mr. Clare asked Ms. Clare for legal help answering the form. He contends that Ms. Clare expunged the arrest from his record and told him that he did not need to disclose the arrest on his FAA forms.

Many years later, during a contentious divorce proceeding, Ms. Clare e-mailed the GAL investigating the parties' parenting plan proposals. In this e-mail, Ms. Clare indicated that the GAL should investigate whether Mr. Clare made false statements to the FAA regarding his mental health, substance abuse, and arrest history. Ms. Clare allegedly shared Mr. Clare's information with George Telquist, her law partner, who also represented her in the divorce. Ms. Clare and Mr. Telquist encouraged the GAL to notify the FAA that Mr. Clare falsified information on his renewal application, particularly details of his medical records and that he had been charged with a DUI in 1998. Both public and private details of Kevin's license renewal applications, DUI, and medical records were provided to the GAL. Ultimately, Mr. Clare self-reported to the FAA, and the FAA instituted its own proceedings.

On December 17, 2018, shortly before the divorce case went to trial, Mr. Clare filed this collateral lawsuit alleging legal malpractice and asserting that Ms. Clare, Mr. Telquist and the Telquist law firm violated attorney-client privilege in sharing his confidential personal information with the GAL. Mr. Clare claims to have filed the suit

---

[4] Driving under the influence.

out of concern that he would lose his career. Ms. Clare conceded that she provided legal services to Mr. Clare to expunge his DUI record. She denied providing any other legal advice to Mr. Clare. However, Mr. Clare testified by deposition and declaration that Ms. Clare also provided legal advice on what information he was required to disclose in his FAA license renewal form 8500 after the expungement. Mr. Clare alleges, and Mr. Telquist denies, that Mr. Telquist had represented Mr. Clare on other unrelated estate planning and litigation matters.

Telquist hired the law firm of Forsberg & Umlauf to represent them in Mr. Clare's lawsuit. On June 27, 2019, through his attorney Ryan Best, Mr. Clare filed a witness disclosure statement. Within this statement, Mr. Clare named the following witness:

> 30(b)(6) representative of Forsberg & Umlauf, P.S., . . . . The 30(b)(6) representative will testify to the negligence of George Telquist, on behalf of Forsberg & Umlauf, in supervising and preventing Andrea Clare's intentional and reckless misconduct. The negligence of Andrea Clare on behalf of Forsberg & Umlauf, in preventing George Telquist's intentional and reckless misconduct. The 30(b)(6) deponent will also detail the role that Andrea and George's sexual relationship played in each of them violating their ethical duties towards Kevin Clare as a client of Forsberg & Umlauf.[5]

Clerk's Papers (CP) at 48. On August 29, 2019, Mr. Best amended the witness disclosure to add Robert McMillen, Judge Bruce Spanner, and Erick West.

---

[5] While there is no explanation for this designation in the record, it appears from context that Mr. Clare's attorney, Ryan Best, mistakenly believed that George and Andrea worked for Forsberg & Umlauf.

On August 6, 2019, Mr. Clare, through his attorney Evan Dobbs, filed a declaration of counsel attaching a true and correct copy of an answer that Judge Spanner had filed to a statement of charges leveled by the Washington Commission on Judicial Conduct (hereinafter "orphan declaration"). The declaration was not filed in connection with any motion.

On September 3, 2019, Telquist filed a joint motion for sanctions, including CR 11 sanctions, against Mr. Clare and his attorneys. The basis for the motion specific to the witness disclosures and Judge Spanner's answer was limited to CR 11:

> 2. For improper purposes in violation of CR 11, Plaintiffs' counsel filed witness disclosures with the Court containing sensitive personal information regarding Ms. Clare and Mr. Telquist that has nothing to do with this case.

CP at 190.

> 3. For improper purposes in violation of CR 11, Plaintiffs' counsel filed with the Court Judge Bruce A. Spanner's Answer to Statement of Charges with the Commission on Judicial Conduct of the State of Washington that contains disparaging comments about Defendants Andrea Clare and George Telquist. It has nothing to do with this case. The document was filed by itself—it is not connected with any pending motion in this case.

CP at 190.

On November 22, 2019, Telquist moved for summary judgment dismissal of Mr. Clare's complaint claiming immunity under the anti-SLAPP statute, and requesting damages. Mr. Clare filed a response. The case was in mandatory arbitration posture at

this point. The summary judgment motion was not properly noted with the court nor heard. On December 13, 2019, Mr. Clare responded to the motion for sanctions. Telquist filed its reply on the first motion for sanctions, maintaining the CR 11 arguments of the original motion brief. After considering 371 pages and hearing argument the trial court took the first motion for sanctions under advisement.

On January 9, 2020, while the first motion for sanctions was still pending, Mr. Clare moved for voluntary dismissal under CR 41. Service on Telquist took place three days later. The dismissal was granted unopposed and without findings on January 22, 2020.

On February 3, Telquist filed a second motion for CR 11 sanctions, asserting that Mr. Clare's complaint was baseless in violation of CR 11, and claiming witness immunity. In addition, Telquist requested damages under the anti-SLAPP statute.

On March 27, the trial court issued its written order and findings on the first motion for sanctions. The trial court determined that it had the authority to decide the first motion for CR 11 attorney fees because it was a collateral issue following dismissal under CR 41. The trial court denied the first motion for sanctions, concluding that CR 11 does not apply to witness disclosure statements and declaration exhibits because they were not pleadings, motions, or memorandum under the rule.

On April 6, 2020, Telquist moved for reconsideration, asserting CR 26 as an alternative basis for imposing sanctions for the witness disclosure statement. Mr. Clare

responded, asserting that CR 26 was being raised for the first time on reconsideration, and the claim was waived when Telquist did not object to the dismissal. The trial court flatly denied reconsideration without any findings.

On June 5, 2020, Mr. Clare responded to the second motion for sanctions arguing that witness immunity and the anti-SLAPP statute was not a defense to a malpractice suit for breach of attorney-client duties and confidences. In denying the second motion for sanctions, the trial court ruled:

> My sense is working through all the pleadings, and I think I have some in the range of 270 pages with this motion is that [Mr. Clare's attorney] has made sufficient argument for me to find that the position that Mr. Clare took was grounded enough in fact and was warranted enough by law given his arguments about the sanctity of the attorney-client privilege and the sanctity of the relationship between a lawyer or a lawyer's partner and client and the acquisition of information that it wouldn't violate that first set, the so-called frivolous and baseless.
>
> And then the second set, to summarize, that's referred to as bad faith filings. Again, I think the arguments and points that he made here this afternoon and those that are in his memorandum are enough to show me that the theory for professional liability wasn't interposed for improper purpose such as harassment.

Report of Proceedings (July 17, 2020) at 55-56. The court also found the second motion untimely because it was filed after the court dismissed the complaint. Finally, the court noted that there was no authority to suggest that the anti-SLAPP statute would protect an attorney who divulges confidential client information.

7

ANALYSIS

Telquist appeals, arguing that the trial court abused its discretion in denying its two motions for CR 11 sanctions, its request for damages and fees under the anti-SLAPP statute, and its motion for reconsideration seeking sanctions under CR 26. We address the court's authority to hear these various motions since two of them were filed after the underlying case was dismissed. We then consider the substance of the motions under CR 11.

A.   TIMELINESS

Preliminarily, we consider whether the two motions for CR 11 sanctions were timely. One motion was filed before the case was dismissed and asserted that two filings in particular—the witness disclosure statement and the orphan declaration—violated CR 11. The trial court denied this motion for sanctions. The second motion, filed after the case was dismissed, sought CR 11 sanctions for filing a frivolous complaint, as well as damages for the affirmative defense under the anti-SLAPP statute.

Although a voluntary dismissal under CR 41(a)(1)(B) generally deprives a court of authority to decide a case on the merits, the court retains jurisdiction for the limited purpose of considering the collateral issue of a defendant's motion for sanctions. *Calvert v. Berg*, 177 Wn. App. 466, 472-73, 312 P.3d 683 (2013). CR 11 sanctions do not constitute a judgment on the merits; rather, the rule requires a determination of the collateral issues of whether an attorney abused the judicial process and what sanction

8

would be appropriate. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994) (citing

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96, 110 S. Ct. 2447, 110 L. Ed. 2d

359 (1990)). Thus, jurisdiction can remain to hear sanctions even years after entry of

judgment on the merits. *Cooter & Gell*, 496 U.S. at 395-96. However, the sanctionable

conduct must have occurred before the case was dismissed. *Calvert*, 177 Wn. App. at

473.

In this case, the court had the authority to consider both the predismissal and

postdismissal motions for CR 11 sanctions. The first motion was filed and argued prior

to voluntary dismissal and involved documents (witness disclosure and affidavit exhibit)

filed before the motion for dismissal. The second motion was filed and heard after

voluntary dismissal but attacked the initial complaint.

The same cannot be said for Telquist's claim for damages and fees under the anti-

SLAPP statute. In its second motion for sanctions, filed after the case was dismissed,

Telquist requested damages and fees under the anti-SLAPP statute. RCW 4.24.510. This

statute provides immunity from civil liability for persons who make complaints or

provide information to government officials. The damages and attorney fees available

under the statute must be pleaded as an affirmative defense. To recover, the party

asserting the affirmative defense must prove specific elements of the defense. *Trummel

v. Mitchell*, 156 Wn.2d 653, 676-77, 131 P.3d 305 (2006). Unlike sanctions under CR

11, the anti-SLAPP statute is similar to a cause of action and is not collateral to the

complaint. *Dillon v. Seattle Dep. Reps., LLC*, 179 Wn. App. 41, 68, 316 P.3d 1119 (2014).

In this case, Telquist's motion for summary judgment on the affirmative defense was pending when the complaint was dismissed. Telquist did not seek to have its summary judgment motion decided before the case was dismissed. Thus, the trial court did not make findings on the elements or the merits of the affirmative defense. Although Telquist was the prevailing party once Mr. Clare dismissed his lawsuit, it cannot recover on the anti-SLAPP claim without the requisite findings. And because the cause of action is not collateral to the complaint, the court did not have the authority to consider the merits of the defense once the lawsuit was dismissed. In this case, the superior court denied the motion on the merits while alternatively finding that the motion was also untimely. We affirm the trial court's denial of the motion for damages and fees under RCW 4.24.510 as untimely without reaching the merits of the defense.

B.  SANCTIONS UNDER CR 11 AND CR 26

*Standard of Review*

A trial court's decision on CR 11 sanctions is reviewed for abuse of discretion. *Eugster v. City of Spokane*, 110 Wn. App. 212, 231, 39 P.3d 380 (2002). The abuse of discretion standard recognizes that deference is owed to the trial judge who is better positioned than an appellate court to decide the issue. Discretion is not abused unless a decision is based on untenable grounds or for untenable reasons. *Id*. (citing *State ex rel.*

10

*Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). If a court finds a violation of CR 11, the court still maintains the discretion on whether to impose sanctions. While an earlier version of the rule made sanctions mandatory once a violation was found, the rule was amended in 1993 to give courts considerable discretion in deciding whether to impose sanctions even if a violation is found. *Snohomish County v. Citybank*, 100 Wn. App. 35, 995 P.2d 119 (2000).

*First Motion—Orphan Declaration*

The trial court denied Telquist's first motion for sanctions, holding that neither the witness disclosure statement nor the orphan declaration were sanctionable under CR 11. CR 11 applies to "every pleading, motion, and legal memorandum" filed by a party who is represented. It requires that pleadings, motions, and legal memoranda be dated and signed by an attorney of record.

The definition of a "pleading" is set forth in CR 7(a), and includes a complaint, answer, reply, and similar third-party complaints, answers, and replies. CR 7(b) also sets forth that all applications for an order shall be made by written *motion*, signed in accordance with rule 11. A motion may be supported by "affidavits or other papers." CR 7(b)(4).

Telquist contends that the orphan declaration was a "legal memorandum" for purposes of CR 11. The relevant dictionary definition of "memorandum" includes: "2. A party's written statement of its legal arguments presented to a tribunal, usu[ally] in the

11

form of a brief. . . . Also termed . . . *memorandum of law; memorandum of points and authorities; memorandum in support*." BLACK'S LAW DICTIONARY 1179 (11th ed. 2019) (alteration in original). The orphan declaration does not meet the definition of a legal memorandum. The declaration did not provide legal argument or points of law. Instead, it provided factual allegations.

For purposes of context, we note that the state court rule is modeled after the federal rule. *Miller v. Badgley*, 51 Wn. App. 285, 300, 753 P.2d 530 (1988). However, the federal rule is distinguishable in one significant respect. The federal rule applies to "Every pleading, written motion, <u>and other paper</u>." Fed. R. Civ. Proc. 11(a) (emphasis added). While recognizing this distinction, courts have been inconsistent in deciding its relevance.

In a footnote, Division One noted that use of the term "legal memorandum" in the state rule, as opposed to "other papers" in the federal rule, suggests that the Washington rule was intended to apply in fewer circumstances. *Miller*, 51 Wn. App. at 299 n.10. Three years later, in another footnote, a different panel of Division One disagreed with the footnote in *Miller*. *Clipse v. State*, 61 Wn. App. 94, 97 n.1, 808 P.2d 777 (1991). Instead, the *Clipse* court noted that the term "legal memorandum" "more logically refers to briefs or <u>other papers filed in support of pleadings or motions</u>." *Id*. at 97 n.1 (emphasis

added).  While the comment in both *Miller* and *Clipse* were likely dicta,[6] the *Clipse*

footnote was relied on by Division Two in *Mitchell v. Wash. State Inst. of Pub. Policy*,

153 Wn. App. 803, 828, 225 P.3d 280 (2009) to hold that a cost bill submitted in support

of a motion was a legal memorandum subject to CR 11.

Given the rule's plain language, especially in contrast to the broader language

used in the federal rule, we hold that the term "legal memorandum" does not include a

declaration or affidavit.  This plain-language interpretation is bolstered by the differences

between the state and federal rule.  Both rules have been amended numerous times over

the years.  While the federal rule applies to "other papers," and would thus apply to a

declaration, the state rule only applies to "legal memorandum."  In light of this

recognized distinction, we assume that the limitation in the state rule is intentional.  *State

v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007) (court rules are interpreted as

though enacted by the legislature whose intent is expressed through plain meaning).

We also note that other rules more specifically apply to a declaration filed in bad

faith.  For instance, CR 56(g) provides for sanctions when an affidavit is presented in bad

faith or solely for the purpose of delay.  In addition, declarations are signed under penalty

of perjury.  *See* GR 13 (use of unsworn statement in lieu of affidavit); *see Biggs*, 124

---

[6] Since the definition of "legal memorandum" was not an issue in either *Miller* or *Clipse*, the footnote comment in both cases are dicta.  *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 365-66, 119 P.3d 816 (2005) (dicta in an opinion cannot establish a rule or principle and dispelling dictum does not establish a significant change in the law).

Wn.2d at 197 (CR 11 sanctions are inappropriate where other court rules more specifically apply.).

We affirm the trial court's decision to deny Telquist's first motion for sanctions under CR 11.

Telquist argues that even if CR 11 does not apply to the orphan declaration, the trial court abused its discretion by not deciding, sua sponte, to exercise its inherent authority to impose sanctions. We decline to address this issue because it is being raised for the first time on appeal. RAP 2.5(a).

*Witness Disclosure Statement—CR 26*

In its first motion for sanctions, Telquist requested sanctions under CR 11 for the witness disclosure statement. The trial court held that CR 11 does not apply to witness disclosure statements. After Mr. Clare dismissed his complaint, Telquist filed a motion for reconsideration, requesting for the first time that the court impose sanctions for the witness disclosure statement under CR 26. The court declined this motion without findings.

On appeal, Telquist essentially concedes that CR 11 does not apply to Mr. Clare's witness disclosure statement. In *Clipse*, 61 Wn. App. 94, the court addressed whether CR 11 applied to an expert witness list. The plaintiff's expert witness list identified people who had never been contacted by the plaintiff and were not familiar with the case. After two fruitless depositions, the defendant moved for sanctions. The trial court imposed

sanctions under CR 11 for filing the list without investigating or speaking to the witnesses. Without deciding the parameters of CR 11, the court affirmed the award of sanctions on the alternative basis that CR 26(g) was the more appropriate rule for sanctions under these circumstances. *Id.* at 97-98.

Telquist also concedes that it did not raise the possibility of CR 26 sanctions for the witness disclosure statement until its motion for reconsideration. "By bringing a motion for reconsideration under CR 59, a party may preserve an issue for appeal that is closely related to a position previously asserted and does not depend [ ]on new facts." *River House Dev. Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 231, 272 P.3d 289 (2012) (citing *Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986)). "But while the issue is preserved, the standard of review is less favorable." *Id.* (citing 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 34:3, at 434 (2d ed. 2009)). "CR 59 provides that on the motion of an aggrieved party the court 'may' vacate an interlocutory order and grant reconsideration." *Id.* "The trial court's discretion extends to refusing to consider an argument raised for the first time on reconsideration absent a good excuse." *Id.* "We review a trial court's denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id.* (quoting *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 684-85, 41 P.3d 1175 (2002)).

15

On appeal, Telquist argues that the trial court abused its discretion in not granting its motion for reconsideration. However, Telquist fails to present any reason for its failure to assert a discovery violation under CR 26 within the context of its first motion for sanctions. Where the record does not contain any reasonable excuse, the trial court was within its discretion to decline to consider the CR 26 argument on reconsideration and deny sanctions. We need not further consider CR 26 on appeal.

*Post-dismissal motion for CR 11 sanctions*

We turn to the trial court's decision on Telquist's second motion for CR 11 sanctions, filed after Mr. Clare dismissed his complaint.[7] In its second motion, Telquist argued that Mr. Clare's complaint was not well-grounded in fact or warranted by existing law. As noted above, CR 11 provides that the signature of an attorney on a pleading constitutes a certificate that the pleading:

> (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

---

[7] Having disposed of Telquist's anti-SLAPP issue above, we only address the second motion request for sanctions under CR 11.

16

The courts have defined two types of improper filings: "(1) those that are not 'well grounded in fact and warranted by law' (frivolous and baseless filings); and (2) those that are interposed for an improper purpose such as harassment or unnecessary delay (bad faith filings)." 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 11 author's cmt. 2, at 230 (5th ed. 2006) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 829 P.2d 1099 (1992)). If a sufficient factual and legal basis exists for the complaint, we do not reach the question of whether counsel made a reasonable investigation before filing. *Brin v. Stutzman*, 89 Wn. App. 809, 827, 951 P.2d 291 (1998). "'The burden is on the movant to justify the request for sanctions'" under CR 11. *Building Industry Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 218 P.3d 196 (2009) (quoting *Biggs*, 124 Wn.2d at 202)). Since sanctions for "bad faith filing of pleadings for an improper purpose or by filing pleadings that are not grounded in fact or warranted by law . . . have a potential chilling effect . . . the trial court should impose sanctions only when it is patently clear that a claim has absolutely no chance of success"; "[t]he fact that a complaint does not prevail on its merits is not enough." *Skimming v. Boxer*, 119 Wn. App. 748, 82 P.3d 707 (2004) (citations omitted) (citing *Bryant*, 119 Wn.2d at 220).

The trial court denied Telquist's second motion for sanctions, finding that it failed to meet its burden of showing that the complaint was wholly frivolous. Instead, the trial court found that the complaint's claim of violation of the attorney-client confidence was

17

"sufficiently well-grounded in fact and sufficiently warranted in law, not baseless or frivolous, and were not interposed for an improper purpose."

The record supports the trial court's conclusion. The issues presented were at the very least debatable. Ms. Clare conceded that she assisted Mr. Clare in expunging his DUI record. Mr. Clare and Ms. Clare disagree about the factual existence of an attorney-client relationship between them and the factual application of the attorney-client privilege under RPC 1.6 to various pieces of information that she allegedly conveyed to Mr. Telquist and the GAL. Whether an attorney-client relationship existed was a disputed issue of fact. Whether Mr. Clare could prevail for an alleged violation of that relationship was not well settled and presented novel issues of law.

On appeal, Telquist asserts the wrong standard of review by arguing that Mr. Clare failed to demonstrate a factual or legal basis for filing the complaint. For purposes of seeking CR 11 sanctions, the burden is on Telquist as the moving party. *See McCarthy*, 152 Wn. App. 720.

Telquist also argues that regardless of any attorney-client relationship, Ms. Clare is immune under the litigation privilege. Under this privilege, also referred to as the witness immunity doctrine, a "witness[ ] in judicial proceedings [is] absolutely immune from suit based on their testimony." *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 125, 776 P.2d 666 (1989). Ms. Clare and Telquist contend that the doctrine applies to the statements she made to the GAL during the divorce case. In making this

18

argument, Telquist fails to address the dispositive question of whether the litigation privilege permits Ms. Clare to violate RPC 1.9(c)(1) by disclosing information relating to the representation of her former client, Mr. Clare, to his disadvantage. Because Telquist has not adequately argued the litigation privilege issue, we decline to review it. *See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) (appellate court will not review issues inadequately argued or briefed).

We conclude that the trial court did not abuse its discretion in denying Telquist's second motion for sanctions after finding that Mr. Clare's complaint was not frivolous for purposes of CR 11.

C.   ATTORNEY FEES IN THIS CASE

Telquist suggests that we exercise our "inherent power" to sanction Mr. Clare's attorneys for the "global conduct" in this case. No case law exists to support the position that this court has the authority to take such action. We decline the invitation. Telquist also requests attorney fees on appeal, citing RAP 18.1, pursuant to RCW 4.24.510 (anti-SLAPP), CR 26(g), and CR 37. The firm does not provide any analysis as to why fees should be awarded under these alternative provisions, so we deny the request for fees.

CONCLUSION

We affirm the trial court's denial of Telquist's two motions for sanctions. We hold that the orphan declaration is not a "pleading, motion, or legal memorandum" for purposes of CR 11 and that any potential imposition of sanctions related to this kind of

19

document would be more appropriate under different rules. We also hold that Telquist's

request for damages and fees under the anti-SLAPP statute, RCW 4.24.510, which was

filed after Mr. Clare's complaint was dismissed, was untimely and not properly before

the trial court for consideration. And finally, we affirm the denial of CR 11 sanctions for

the complaint. The trial court did not abuse its discretion in finding that the complaint

was not frivolous or filed for an improper purpose.

Affirmed.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

20