**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| ASHA SINGH, personally and as Personal Representative of the Estate of NARENDRA P. SINGH, | No. 86932-9-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, a governmental entity; UNIVERSITY OF WASHINGTON, a Washington State entity; and JOHN DOES 1-5, | |
| Respondents. | |

MANN, J. — Asha Singh, personally and as the personal representative of the estate of her husband, Narendra Singh, appeals orders denying her motion to vacate a judgment and her motion for an award of attorney fees. We affirm.

I

This is the second appeal arising from a lawsuit in which Singh sued the State of Washington and the University of Washington, her husband's former employer (collectively, the University). See Singh v. State, No. 80662-9-I, slip op. at 1-2 (Wash. Ct. App. Aug. 16, 2021) (unpublished), https:// www.courts.wa.gov/opinions/pdf/ 806629.pdf. Singh alleged breach of contract; tortious interference with business expectancy; wage violations; failure to provide reasonable accommodation in violation

of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW; trespass to chattels and/or conversion; interference with protected leave; violation of the Public Records Act, chapter 42.65 RCW; and wrongful termination. On September 3, 2019, the trial court summarily dismissed all of Singh's claims against the University. In Singh's first appeal, we affirmed except with regard to the reasonable accommodation claim, which we remanded for trial. Singh, slip op. at 1-2. Meanwhile, on October 11, 2019, the trial court entered a $9,475.00 judgment against Singh for sanctions imposed due to Singh's failure to timely disclose an expert witness (2019 sanctions judgment).

On March 26, 2024, following remand from Singh's first appeal, the University made an offer of judgment under Civil Rule (CR) 68. The offer provided,

> Pursuant to CR 68, the University . . . hereby offers to allow judgment to be entered against it in favor of Singh . . . in the total amount of one hundred twenty thousand dollars ($120,000.00), which is inclusive of all damages, costs, and reasonable attorneys' fees incurred by [Singh] up to the date of this Offer of Judgment. By accepting this offer, [Singh] understands and acknowledges that the foregoing sum is the total amount to be paid by [the University], and [Singh] waives her right to seek an award of additional money, including fees and costs. Furthermore, by accepting this offer, [Singh] acknowledges and agrees that this will resolve all claims and causes of action asserted by [Singh] in this matter against anyone and there will be no trial.

(Emphasis added.) Singh accepted the offer, and the parties filed a notice of settlement on April 16, 2024.

Meanwhile, the parties' attorneys began corresponding about payment details and the form of a judgment to reflect the settlement. On April 5, 2024, counsel for the University proposed that the $120,000 judgment for Singh, and the 2019 sanctions judgment for the University, both "be satisfied through a payment to the Estate minus the amounts owed on the [2019 sanctions judgment]," which was then approximately

-2-

$14,000. The University's counsel also wrote, "I assume the check will be made out to the Estate of Dr. Narendra Singh and that we will need a W9 number for that purpose. I also assume this would be paid for emotional distress damages only and therefore paid pursuant to a 1099." On April 15, 2024, Singh's counsel responded, "[W]e can agree that $106,000 will be allocated for emotional distress only and will be paid pursuant to a 1099 and $14,000 will be allocated for sanctions only."

On April 17, 2024, the University sent Singh's counsel a proposed form of judgment, which included a judgment summary providing as follows:

| | |
|---|---|
| Judgment Debtor | University of Washington |
| Principal Judgment Amount<br>. . . . | $120,000.00 |
| Total Taxable Costs, Attorneys' Fees and Other Post Judgment Relief | N/A |
| Prejudgment Interest | N/A |
| Post judgment Interest | N/A |
| Total Judgment Amount | $120,000.00 |

The proposed judgment also stated, "[The University] made an offer of judgment in the amount of one hundred twenty thousand dollars ($120,000), <u>inclusive of all damages, costs, and reasonable attorneys' fees</u>," and "[Singh] accepted the offer of judgment and notified the Court of the same." (Emphasis added.) Singh's counsel responded the same day, writing,

> Singh approves filing of the attached provided [the University] is . . . willing to agree to the following:
>
> By this agreement, the parties intend to supersede the terms of [the University's] March 26, 2024 $120,000 offer of judgment and [Singh]'s acceptances thereof. By agreement of both parties on April 17th, 2024

> $106,000 shall be paid to the Estate of Narendra Singh for emotional distress damages only. Additionally, [Singh] will file a satisfaction of judgment concerning the [2019 sanctions judgment].

The University's counsel responded,

> [S]orry, but your email is a bit confusing to me? Are you proposing that the Court would not enter a judgment on the $120k?
>
> I have understood the agreement and process to be:
>
> - [Singh] files and the court enters the judgment of $120k in the form I sent;
> - The UW pays [Singh] $106K;
> - [Singh] files a satisfaction of the $120k judgment in the form I sent, and the University files a satisfaction of the 2019 judgment in the form I sent.
>
> Do you agree to the above?

Singh's counsel responded that Singh agreed to the bullet points in the e-mail but needed the University to indicate its agreement with the paragraph in his earlier e-mail (hereinafter the e-mail side agreement) "for internal accounting purposes." Singh's counsel would later state that the e-mail side agreement was "needed to resolve both tax issues" and an issue related to an attorney fee lien asserted by the estate of one of Singh's former attorneys, David Adler. The University's counsel responded, "[Y]es, this works," and on April 18, 2024, Singh's counsel sent the University's proposed judgment to the trial court, which entered it that same day (2024 judgment).

On April 29, 2024, Singh moved under CR 59(h) to amend the 2024 judgment in two respects: first, to reduce the amount of the judgment to $106,000 to reflect the parties' agreement to offset the 2019 sanctions judgment against the 2024 judgment, and second, to add postjudgment interest. Singh argued postjudgment interest was warranted because, on April 25, i.e., a week after the trial court entered the 2024

-4-

judgment, the University's counsel informed Singh's counsel that "he would now not be sending . . . Singh any of the money he, on behalf of is client, offered to resolve the case under CR 68."

In support, Singh's counsel provided a copy of an e-mail from the University's counsel stating that the Adler estate "has just recently claimed that, pursuant to RCW 60.40.010, the [Adler estate's] lien attaches to money in the hands of the University and to settlement proceeds, and announced its intent to foreclose on that lien." The University's counsel asserted that "[t]his represents a material change in circumstances since we began discussing satisfaction of the judgment" and that "any direct payment by the University to the Singh Estate presents a risk that the Estate's lienholders will also attempt to collect against the University." The University's counsel also stated that "[g]iven the current circumstances, the University intends to file an interpleader complaint and place the entire $120,000 judgment funds into the court registry," which the University did on April 29, 2024. Singh argued in her motion to amend that Adler had not done a competent job of representing her, "[t]he fact that the [Adler estate] has a lien on the case . . . was not something that [the University's counsel] recently found out," and if the University wanted to interplead the judgment, it "should have mentioned [that] as part of negotiating the judgment."

On May 10, 2024, Singh filed an additional motion requesting that the trial court vacate the 2024 judgment under CR 60(b)(1) "in the alternative to her April 29, 2024 motion to amend judgment." The motion was substantially the same as her earlier motion to amend, except that in addition to the relief requested in her motion to amend, Singh requested that the court "prohibit [the University] from interpleading funds" and

"declare that [the University] is not owed fees or costs related to its interpleader action."

In response to Singh's motion to amend, the University "t[ook] no position on whether the Court should amend the judgment by reducing it to $106,000, but maintain[ed] that post-judgment interest [was] inappropriate because the University promptly made an unconditional offer to place judgment funds into the court registry." The University opposed Singh's motion to vacate, asserting that as of the date the court entered the 2024 judgment, the lien notices that had been filed by Singh's former attorneys, including Adler, "were asserted against money <u>ultimately received or obtained by</u>" Singh. (Emphasis added.) It represented that it was only after the court entered the 2024 judgment that counsel for the Adler estate claimed that its lien attached to settlement funds held by the University. In support, the University's counsel provided a copy of an April 22, 2024 e-mail in which the Adler estate's counsel wrote to the University's counsel and Singh's counsel,

> The purpose of this email is to confirm that my client seeks to foreclose on the lien, the amount of which is now at least $52,922.13. Pursuant to RCW 60.40.010(1)(c), the lien attaches to "money in the hands of the adverse party in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party." In this case, the adverse party is the University of Washington. Pursuant to RCW 60.40.010(1)(d), the lien also attaches to "an action . . . and its proceeds . . . for the sum due under [the fee agreement]." In this case, the lien attaches to a portion of the $125,000 settlement proceeds. Pursuant to RCW 60.40.010(4), the lien created by subsection (1)(d) "is not affected by settlement between parties to the action until the lien . . . is satisfied in full."

(Alterations in original.) Counsel for the University declared that on April 25, 2024, he spoke with the Adler estate's counsel, "who confirmed that his client is asserting his attorney's fee lien attaches to the judgment funds held by the University."

On May 29, 2024, the trial court denied Singh's motion to vacate the 2024

judgment. It granted in part and denied in part her motion to amend the judgment, and it entered an amended judgment that was identical to the 2024 judgment in all material respects, except that it changed the judgment amount to $106,000 and directed the University to file a satisfaction of the 2019 sanctions judgment, which the University did the same day.

On June 4, 2024, Singh moved under the WLAD for an award of $602,600.41 in attorney fees and costs, plus a 1.5-times multiplier, for a total award of $892,537.29. She asserted that the e-mail side agreement constituted an "amended offer of judgment" that was "silent on [Singh]'s entitlement to attorneys' fees and costs." She asserted further that because the amended offer was silent in this regard, the trial court was obligated to award her fees and costs incurred by the 15 different law firms that she had retained during the pendency of the litigation and first appeal. The trial court denied Singh's motion, explaining,

> [Singh] has no basis to seek attorneys' fees or costs because [she] accepted an[ ] offer of judgment which was inclusive of fees and costs and in which [she] agreed to waive her right to seek an award of additional money, including fees and costs. Correspondence of counsel discussing a potential characterization of a payment for tax and accounting purposes did not give [Singh] a basis to seek attorneys' fees or costs.

Singh appeals.

## II

Singh argues that the trial court erred by denying her motion to vacate the 2024 judgment. We disagree.[1]

---

[1] Singh asserts that the remedy for the trial court's alleged error is to remand the reasonable accommodation claim for trial. Because we conclude that the trial court did not err by denying Singh's motion to vacate, we need not reach the issue of remedy. However, we note that below, Singh requested only that a different form of judgment be entered—not that the 2024 judgment be vacated in its entirety.

A

"We review a trial court's decision on a motion to vacate under CR 60(b) for abuse of discretion." Mitchell v. Wash. State Inst. of Pub. Pol'y, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). " 'An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons.' " Mitchell, 153 Wn. App. at 821 (quoting Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). " 'A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.' " Mitchell, 153 Wn. App. at 821-22 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). " 'A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take and arrives at a decision outside the range of acceptable choices.' " Mitchell, 153 Wn. App. at 822 (citation and internal quotation marks omitted) (quoting Rohrich, 149 Wn.2d at 654).

B

Singh first asserts that she was entitled to relief because the University filed an interpleader action rather than paying her directly. In particular, Singh contends that the University's actions presented a basis for relief under CR 60(b)(11), which authorizes the trial court to relieve a party from a judgment for "[a]ny other reason justifying relief."

But Singh did not rely below on CR 60(b)(11), which applies only "in extreme, unexpected situations and when no other subsection of CR 60(b) applies." Shandola v. Henry, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). Instead, Singh relied solely on

-8-

CR 60(b)(1), arguing that the University's failure to disclose that it would interplead the settlement proceeds "was a surprise [and] highly irregular." Singh cannot show that the trial court abused its discretion by declining to vacate the 2024 judgment based on a subsection of CR 60(b) that Singh never asked the court to consider. Cf. State v. Brooks, 149 Wn. App. 373, 393, 203 P.3d 397 (2009) (trial court did not abuse its discretion by not considering alternatives that were not presented to it).

Singh also fails to show that the trial court erred under CR 60(b)(1). The record supports a determination that a dispute about the rights to any settlement proceeds was not a surprise: it is undisputed that multiple of Singh's prior attorneys had filed lien notices in the case, and Singh's own counsel later described the e-mail side agreement as "needed to resolve both tax issues and the issue regarding the [Adler estate's] lien." That the e-mail side agreement did not successfully resolve this issue does not render the later dispute a surprise. Once that dispute arose and the Adler estate asserted rights to money in the University's hands, the University's decision to file an interpleader action was not unreasonable—much less irregular. See RCW 4.08.160 ("Anyone having in his or her possession, or under his or her control, any property or money, or being indebted, where more than one person claims to be the owner of, entitled to, interested in, or to have a lien on, such property, money, or indebtedness, or any part thereof, may commence an action in the superior court against all or any of such persons, and have their rights, claims, interest, or liens adjudged, determined, and adjusted in such action."). The trial court did not abuse its discretion by declining to vacate the 2024 judgment on the basis of surprise or irregularity.

Singh disagrees and cites Benavente v. Thayer, 285 Or. App. 148, 395 P.3d 914

(2017), for the proposition that the University's filing the interpleader action conflicted with the offer of judgment that she accepted. But not only is Benavente nonbinding, it is unpersuasive. There, the trial court allowed a defendant to use the interpleader process to resolve third-party claims to a judgment that stemmed from an offer of judgment. Benavente, 285 Or. App. at 149. Even though the offer of judgment "contain[ed] no term that could be construed as authorizing an award of attorney fees to defendant," the trial court entered a supplemental judgment in the interpleader action that "added an obligation for plaintiff to pay attorney fees." Benavente, 285 Or. App. at 157. The Oregon Court of Appeals reversed the supplemental judgment, holding that it was "not in accordance with the terms of the accepted offer [of] judgment." Benavente, 285 Or. App. at 157. It expressly declined, however, "to separately address plaintiff's challenge to the general judgment—that it allowed defendant to pay the $32,000 to the court for distribution [via interpleader] rather than directly to plaintiff." Benavente, 285 Or. App. at 157 (emphasis added). That is, Benavente did not resolve the very issue for which Singh cites it. Singh's reliance on Benavente is misplaced.

C

Singh also contends that she was entitled to relief because the University violated the implied covenant of good faith and fair dealing. For two independent reasons, Singh fails to show that the trial court abused its discretion by rejecting this argument.

First, while Singh cites Gage v. Boeing Co., 55 Wn. App. 157, 776 P.2d 991 (1999), for the proposition that breach of the implied covenant of good faith and fair dealing entitled Singh to relief under CR 60(b), Gage is readily distinguishable. There,

we held that the trial court did not abuse its discretion by vacating a default judgment where, among other things, the plaintiff failed to provide notice to the defendant of the default proceedings as required under CR 55. Gage, 55 Wn. App. at 165. Unlike Gage, this case does not involve a default judgment, which is disfavored and subjected to a specific multifactor test when a party moves to vacate it. See Gage, 55 Wn. App. at 160, 163. Gage made no mention of the implied covenant of good faith and fair dealing, and it does not support Singh's assertion that a trial court abuses its discretion by not vacating a judgment based on a breach of that covenant.

Second, even if breach of the implied covenant were a basis for relief, Singh does not show that the trial court erred by rejecting her claim that the University breached that covenant. Again, Singh does not dispute that the lien notices on file indicated that Singh's prior attorneys were asserting liens against only funds in Singh's possession. And the record reflects that the Adler estate did not assert a claim against settlement funds in the University's hands until after judgment was entered. When the Adler estate asserted its claim, the University's counsel asked Singh's counsel whether Singh intended to pay her lienholders and obtain lien releases, to which Singh's counsel responded, "Respectfully this is none of your business and calls for attorney client privilege. Please confirm that the check is in the mail." The University's counsel then conferred with the Adler estate's counsel, who "confirmed that his client is asserting his attorney's fee lien attaches to the judgment funds held by the University." Only then did the University indicate that it planned to file an interpleader action. In short, the record supported a determination that the University acted reasonably and in good faith.

Singh relies on Scribner v. Worldcom, Inc., 249 F.3d 902 (9th Cir. 2001), to argue

that it does not matter that the University believed that its conduct was justified. That case involved a compensation committee's decision whether to allow a former employee to exercise his stock options under a stock option plan. Scribner, 249 F.3d 905. That decision turned on the committee's determination whether the employee had been terminated "with cause" or "without cause." Scribner, 249 F.3d at 906. Even though "it was clear that [the employee]'s termination was not caused by any inadequacy of performance," the committee determined that his termination "would be considered 'with cause' for stock options purposes," such that he was not eligible to exercise his options. Scribner, 249 F.3d 906. In holding that this determination was not made in good faith, the Ninth Circuit explained that "rather than making a good faith effort to determine whether his termination had been 'with cause' or 'without cause' based on language of the Plan and his justified expectations, the Committee chose its desired result, and then applied the label necessary to bring that result about." Scribner, 249 F.3d at 911-12 (emphasis added). In particular, "[s]everal members of the stock option Committee testified that they determined [the employee]'s termination to be 'with cause' specifically in order to prevent his options from vesting." Scribner, 249 F.3d at 911 (emphasis added).

Here, unlike in Scribner, Singh points to no evidence that the University desired not to pay Singh directly and then filed the interpleader action to achieve that result. To the contrary, the record shows that until the Adler estate made a claim against the settlement funds held by the University, the University was in the process of issuing a check to Singh. And while Singh asserts that it is "undeniable" that by not paying her directly, the University "denied [her] enjoyment of the full benefit she reasonably

-12-

expected from acceptance of the offer of judgment," she does not explain how such an expectation was reasonable given the multiple liens asserted by her former attorneys in this proceeding and her own counsel's acknowledgment that the e-mail side agreement was needed to address the Adler estate's lien.

III

Singh next argues that the trial court erred by denying her motion for attorney fees. Again, we disagree.

A

Singh first asserts that "settlements conditioned on waivers of attorney fees for claims brought under the WLAD are contrary to public policy and unenforceable." But Singh did not raise the issue of whether the WLAD permits attorney fee waivers in the trial court, and we decline to reach that issue for the first time on appeal. See Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 441, 191 P.3d 879 (2008) ("A party who fails to raise an issue at trial normally waives the right to raise that issue on appeal." (citing RAP 2.5(a))).

B

Singh also asserts that she did not waive her right to seek attorney fees. Determining whether Singh waived that right involves construing the offer of judgment and the e-mail side agreement, and "[t]he 'usual rules of contract construction' apply." Lietz v. Hansen Law Offices, P.S.C., 166 Wn. App. 571, 585, 271 P.3d 899 (2012) (internal quotation marks omitted) (quoting Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 833 (9th Cir. 1997)). To that end, "[w]hen [contract] interpretation depends on factual determinations such as the credibility of extrinsic evidence or a choice among

reasonable inferences to be drawn from extrinsic evidence, we review the fact finder's determinations of such matters for substantial evidence." Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). "Otherwise contract interpretation is a question of law, which we review de novo." Dave Johnson Ins., 167 Wn. App. at 769.

Singh does not dispute that by accepting the CR 68 offer of judgment, she unambiguously waived her right to seek attorney fees. Cf. Wash. Greensview Apt. Assocs. v. Travelers Prop. Cas. Co. of Am., 173 Wn. App. 663, 667, 295 P.3d 284 (2013) ("[I]n order to preclude an award of attorney fees in addition to the judgment amount, the offer of judgment must unambiguously indicate that the offer amount includes attorney fees."). She claims, however, that the 2024 judgment entered thereon "expressly was 'superseded' " by the e-mail side agreement, and because the e-mail side agreement "includes no reference either to costs or to attorney fees," she was "entitled to an award of attorney fees and costs." Put another way, Singh's assertion of "no waiver" is premised on a claim that the e-mail side agreement was the complete and final expression of the parties' agreement, i.e., that it was fully integrated.[2] Cf. Emrich v. Connell, 105 Wn.2d 551, 556, 716 P.2d 863 (1986) (fully integrated agreement is one that the parties intended to be a final expression of all terms agreed upon).

The trial court rejected this claim, and the record supports the trial court's

---

[2] For example, Singh (1) claims that the e-mail side agreement was the actual offer of judgment, (2) characterizes the CR 68 offer of judgment and the communications between her counsel and the University's counsel as extrinsic evidence, and (3) asserts they were thus "immaterial to interpretation of" the e-mail side agreement. But this would be true only if the e-mail side agreement was fully integrated. See Brogan & Anenssen LLC v. Lemphiear, 165 Wn.2d 773, 775, 202 P.3d 960 (2009) ("The parol evidence rule precludes the use of extrinsic evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract; that is, a contract intended as a final expression of the terms of the agreement." (emphasis added)).

decision.  Cf. Emrich, 105 Wn.2d at 556 (whether a writing is intended to be a fully integrated agreement is a question of fact, and in making that determination, the trial court may consider relevant extrinsic evidence).  The evidence showed that the sole purpose of the e-mail side agreement was to memorialize the parties' agreement to offset the 2019 sanctions judgment against the 2024 judgment and to characterize the payment for tax and accounting purposes.  Singh's counsel described the e-mail side agreement as intended "to reduce the net proceeds to [the appellant] in exchange for satisfying the judgment against her related to discovery sanctions."  And Singh's counsel indicated via e-mail that the e-mail side agreement was needed for "internal accounting purposes," and later described it as "needed to resolve both tax issues and the issue regarding the . . . [Adler estate's] lien."  Meanwhile, Singh points to no evidence that the parties mutually intended that the agreement would displace other terms of the accepted offer of judgment, including Singh's unambiguous waiver of attorney fees.  To the contrary, even after the University indicated its agreement to the language in the e-mail side agreement, Singh's counsel transmitted a proposed form of judgment to the trial court that had "N/A" on the line for "Total Taxable Costs, Attorneys' Fees and Other Post Judgment Relief" and stated that the University's offer was "inclusive of all damages, costs, and reasonable attorneys' fees."  Singh does not show that the trial court erred by rejecting her claim that the e-mail side agreement's "silence" on the issue of attorney fees supplanted the unambiguous waiver in the CR 68 offer of judgment.

Affirmed.[3]

_Mann, J._

WE CONCUR:

_Chung, J._

_____

---

[3] Singh requests an award of attorney fees on appeal under the WLAD. Because Singh does not prevail on appeal, we deny her request. Cf. Carle v. McChord Credit Union, 65 Wn. App. 93, 111, 827 P.2d 1070 (1992) (the WLAD entitles prevailing party on appeal to an award of reasonable attorney fees).